**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>vs.<br><br>BRANDON J. BEIERMANN,<br><br>              Defendant. | **WESTERN DIVISION**<br><br>No. CR 07-4018-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING PARTIES' ACCESS TO COURT'S PSYCHOSEXUAL ASSESSMENT EXPERT** |
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>vs.<br><br>KELLY LEONARD JACOB,<br><br>              Defendant. | **EASTERN (WATERLOO) DIVISION**<br><br>Nos. CR 07-2002-MWB<br>& CR 07-2017-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING PARTIES' ACCESS TO COURT'S PSYCHOSEXUAL ASSESSMENT EXPERT** |
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>vs.<br><br>MATTHEW ORVAL KASHAS,<br><br>              Defendant. | **WESTERN DIVISION**<br><br>No. CR 07-4075-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING PARTIES' ACCESS TO COURT'S PSYCHOSEXUAL ASSESSMENT EXPERT** |

————————————

**TABLE OF CONTENTS**

*I.* *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A.  The Charges And The Guilty Pleas* . . . . . . . . . . . . . . . . . . . . . . . 3
        *1.*    *Defendant Beiermann* . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        *2.*    *Defendant Jacob* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        *3.*    *Defendant Kashas* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    *B. Appointment Of The Court's Expert* . . . . . . . . . . . . . . . . . . . . . . . . 7
    *C. The Prosecution's Request For Access To The Court's Expert* . . . . . . . 8
    *D. Arguments Of The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *1. The prosecution's argument* . . . . . . . . . . . . . . . . . . . . . . . . 9
        *2. The defendants' arguments* . . . . . . . . . . . . . . . . . . . . . . . . 10

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *A. The Statutory Scheme For Court-Appointed Experts At Sentencing* . . . 11
        *1. The applicable statutes* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        *2. Interpretation of the statutes* . . . . . . . . . . . . . . . . . . . . . . . 13
    *B. Applicable Case Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        *1. United States v. Craven* . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        *2. Burns v. United States* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        *3. Other decisions and general propositions* . . . . . . . . . . . . . . 24

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

The issue in these three cases raises a novel question—indeed, one of apparent first impression—of whether the prosecution is entitled, over the defendants' objections, to additional information from a court-appointed expert psychologist, beyond the expert's psychosexual assessment report for each defendant, where the expert has been appointed as the court's expert, the expert's reports have been submitted to the court, and the expert's reports have been disseminated to the parties, all pursuant to 18 U.S.C. § 3552. The prosecution's voracious appetite for the information that it requests is both surprising and troubling for a host of reasons. For example, there is nothing in the plain language of § 3552 that even hints at what the prosecution seeks, so that granting the

prosecution's request would require a significant leap of judicial activism to judicially amend the statute, to please the prosecutors, in a way that Congress easily could have done, but just as plainly did not do; there is a total lack of any claimed constitutional deficiency in the statute that could theoretically provide the relief requested by the prosecution; there is a total lack of any case law supporting the prosecution's expansive view of the access to a § 3552(c) expert to which the prosecution claims entitlement; there would be a substantial cost shifting that would result from the access that the prosecution demands, requiring the judiciary to absorb significant increases in the expert's fees to feed the executive branch's appetite for additional information; and there is simply nothing in § 3552, or this ruling, that precludes any party from hiring a psychosexual expert of that party's choosing at that party's own expense. Hiring its own expert would be much easier for the prosecution than the defense, where the prosecution seemingly has unlimited funds to expend on litigating cases, and the prosecution has easy, and probably free, access to a host of government experts within the Department of Justice who already perform psychosexual assessments. Needless to say, the prosecution's requests for extensive access to the court's § 3552(c) expert will be denied. The court will explain its rationale for this determination, in more detail, in this ruling.

## I.  INTRODUCTION

### A.  The Charges And The Guilty Pleas

The defendants are each charged with child pornography and/or other sexual offenses involving minors. Each defendant has entered a guilty plea to one or more such offenses. The court will detail the defendants' charges and guilty pleas in somewhat more detail below.

### 1.	*Defendant Beiermann*

In an Indictment (docket no. 2) handed down in this district on February 28, 2007, in Case No. CR 07-4018-MWB, defendant Brandon J. Beiermann is charged with the following offenses: **Count 1** charges that, from in or about September 2005, through about January 11, 2006, this defendant knowingly transported and shipped and attempted to transport and ship, in interstate and foreign commerce, visual depictions of minors engaged in sexually explicit conduct, all in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1); **Count 2** charges that, from in or about September 2005, through about January 11, 2006, this defendant knowingly received and attempted to receive visual depictions of minors engaged in sexually explicit conduct, said visual depictions having been transported in interstate or foreign commerce, all in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1); and **Count 3** charges that, from on or about January 11, 2006, this defendant knowingly possessed and attempted to possess visual depictions of minors engaged in sexually explicit conduct, said visual depictions having been produced using materials that had been shipped and transported in interstate and foreign commerce, namely, a Hewlett Packard computer that was manufactured outside the state of Iowa, all in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

Eventually, on September 5, 2007, defendant Beiermann entered guilty pleas to all three counts against him, pursuant to a plea agreement, before a magistrate judge of this district. On September 20, 2007, the undersigned accepted the magistrate judge's recommendation to accept defendant Beiermann's guilty pleas. Defendant Beiermann's sentencing hearing was originally set for December 3, 2007, but was subsequently rescheduled, more than once, until it was set for the current date of November 19, 2008.

## 2. *Defendant Jacob*

In an Indictment handed down in the Middle District of Florida on July 26, 2007, and transferred by consent to this district on November 29, 2007, pursuant to Rule 20 of the Federal Rules of Criminal Procedure, and here given Case No. CR 07-2002-MWB, defendant Kelly Leonard Jacob is charged with the following offenses: **Count 1** charges that, from on or about January 24, 2007, through about March 28, 2007, this defendant, by means of a facility of interstate and foreign commerce, that is, by computer via the Internet, knowingly and intentionally attempted to persuade, induce, entice, and coerce B.S., a person whom defendant believed had not attained the age of 18 years, to engage in sexual activity for which a person could be charged with criminal offenses under the laws of the State of Florida, that is, the crime of lewd or lascivious conduct on a person less than 16 years of age, in violation of Section 800.04, Florida Statutes, and the crime of promotion of sexual performance by a child less than 18 years of age, in violation of Section 827.071(3), Florida Statutes, all in violation of 18 U.S.C. § 2422(b); and **Count 2** charges that, on or about February 1, 2007, this defendant knowingly transported and shipped in interstate and foreign commerce, by any means, including by computer, visual depictions, the production of which involved the use of minors engaging in sexually explicit conduct, which visual depictions were of such conduct, and which visual depictions were specifically identified in specified computer files, all in violation of 18 U.S.C. § 2252(a)(1) and (b)(1).

In an Indictment (docket no. 1) handed down in this district on August 8, 2007, in Case No. CR 07-2017-MWB, defendant Kelly Leonard Jacob was also charged with the following offenses: **Count 1** charges that, from on or about June 24, 2007, until on or about July 21, 2007, this defendant, using a facility and means of interstate and foreign commerce, namely the Internet, knowingly attempted to persuade, induce, entice, and

coerce a person that the defendant believed to be under the age of sixteen to engage in sexual activity for which a person could be charged with criminal offenses under the laws of the State of Iowa, that is, Iowa Code Section 709.4(2)(c)(4), sexual abuse in the third degree, all in violation of 18 U.S.C. § 2422(b); **Count 2** charges that, on or about July 13, 2007, this defendant knowingly transported and attempted to transport in interstate commerce a visual depiction of a minor engaging in sexually explicit conduct, all in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1); and **Count 3** charges that, on or about July 21, 2007, this defendant knowingly traveled in interstate commerce from Minnesota to Blackhawk County, Iowa, for the purpose of engaging in sexual acts in violation of Iowa Code Section 709.4(2)(c)(4), sexual abuse in the third degree, with a person that the defendant believed to be under the age of sixteen, all in violation of 18 U.S.C. § 2423(b).

On January 10, 2008, defendant Jacob entered guilty pleas, pursuant to a plea agreement, to **Count 1** of the Indictment filed in Case No. CR 07-2002-MWB, and to **Counts 1** and **2** in Case No. CR 07-2017-MWB, before a magistrate judge of this district. The undersigned accepted the magistrate judge's recommendation to accept those guilty pleas on January 25, 2008. Defendant Jacob's sentencing hearing was originally scheduled for April 18, 2008, but was subsequently rescheduled, more than once, until it was set for the current date of November 19, 2008.

### 3.    *Defendant Kashas*

In an Indictment (docket no. 1) handed down on October 26, 2007, in Case No. CR 07-4075-MWB, defendant Matthew Orval Kashas is charged with the following offenses: **Count 1** charges that, on or about April 29, 2007, defendant Kashas knowingly distributed, received, and attempted to distribute and receive, a visual depiction of at least one minor engaged in sexually explicit conduct that had been transported in interstate and foreign commerce and that was received and distributed by use of a cellular telephone, all

in violation of 18 U.S.C. § 2252A(a)(2)(A); **Count 2** charges a similar offense on or about April 30, 2007; and **Count 3** charges a similar offense, but involving only distribution and attempted distribution, on or about May 1, 2007.

Eventually, on February 19, 2008, defendant Kashas entered a guilty plea to **Count 3**, pursuant to a plea agreement, before a magistrate judge of this district. On March 10, 2008, the undersigned accepted the magistrate judge's recommendation to accept defendant Kashas's guilty plea. Defendant Kashas's sentencing hearing was originally set for May 9, 2008. Although the court held a hearing on that date, Kashas's sentencing was continued, more than once, until it was set for the current date of January 14, 2009.

### B. Appointment Of The Court's Expert

On April 9, 2008, the court entered orders in defendant Beiermann's and defendant Jacob's cases directing those defendants to submit to a presentence examination and study to include a psychosexual assessment pursuant to 18 U.S.C. § 3552(c), finding that such a study would significantly aid the court in applying the 18 U.S.C. § 3553(a) sentencing factors. The court initially directed that each study be conducted by a qualified consultant contracted with the United States Probation Office, that the consultant prepare a report, and that such report be released to the Probation Office. The court directed that the parties file objections to its order within seven days. Defendants Beiermann and Jacob filed objections requesting that the court consider appointing either of two experts in the State of Iowa, Dr. Luis Rosell and Dr. Craig Rypma, that they be believed to be as well qualified as the psychologist from Sioux Falls, South Dakota, under contract to the United States Probation Office. By orders dated May 15, 2008, the court notified the parties that

defendant Beiermann's and defendant Jacob's evaluations had been scheduled with Dr. Rypma.

Similarly, at defendant Kashas's sentencing hearing on May 9, 2008, the court continued the sentencing for sixty days and ordered a psychosexual examination of that defendant. On May 15, 2008, the court entered a separate order directing that defendant Kashas submit to a presentence examination and study to include a psychosexual assessment, pursuant to 18 U.S.C. § 3552(c), to aid the court in applying the 18 U.S.C. § 3553(a) sentencing factors. The court also appointed Dr. Rypma to perform defendant Kashas's psychosexual assessment.

### C.  The Prosecution's Request For Access To The Court's Expert

At some point, the prosecution made an informal inquiry to the court concerning whether the court would allow the parties access to the court-appointed expert, and the court initially indicated that it would not allow such access, but that it would leave the question open for briefing by the parties. The prosecution eventually filed in each of these cases a request for additional time to brief the issues concerning the parties' access to the court-appointed expert. On September 16, 2008, the court entered an order in each case establishing a briefing schedule on the question of whether the parties should be allowed access to the court's expert and any additional materials other than the psychosexual assessment provided by Dr. Rypma, which had, by that time, been forwarded to the parties by the United States Probation Office with each defendant's proposed presentence investigation report (PSIR). In each case, the court set a deadline of October 6, 2008, for the prosecution's brief and October 20, 2008, for the defendant's brief.

The prosecution states in its October 6, 2008, brief in each case that, in light of Dr. Rypma's report, the prosecution would like the opportunity to collect information from and to speak to Dr. Rypma prior to each sentencing hearing and would potentially like to

call Dr. Rypma as a witness at each sentencing hearing. The court understands these seemingly benign requests to be, in actuality, sweeping requests for, among other things, details of all of the tests that the expert conducted, all of the test results that he obtained, all of the materials that he reviewed, and all of the notes that he took on each of the defendants, as well as *ex parte* access to the expert himself before each sentencing hearing, and the opportunity to cross-examine the expert extensively about his opinions at each sentencing hearing. All of the defendants resist the prosecution's request for such access to Dr. Rypma, and the defendants do not seek such access for themselves.

### D. Arguments Of The Parties

#### 1. The prosecution's argument

The prosecution filed essentially identical briefs in each of these cases concerning the parties' access to the court's expert. Although the prosecution acknowledges that there appears to be no authority directly on point concerning whether or not parties should be allowed access to an expert appointed by the court pursuant to § 3552, the prosecution argues that it should be allowed such access to Dr. Rypma, because allowing such access would best serve the court, the parties, and justice. The prosecution argues that such access will allow focused, adversarial development of the factual and legal issues relevant to the determination of the appropriate sentence and that, without such adversarial testing, there is a potential for imposition of an inaccurate sentence.

Somewhat more specifically, the prosecution argues that denying such access will limit the parties' ability to fully develop relevant issues, such as the scientific or factual bases for the expert's opinion, particularly where the court-appointed expert's opinion in each case appears to be based in significant part on each defendant's self-reported conduct and history. The prosecution also argues that the parties' examination of the expert will

9

assist the court in making a determination of whether the expert's opinion carries sufficient indicia of reliability to justify the court's reliance upon it. More generally, the prosecution argues that cross-examination is the most effective means to determine the reliability of any testimony, especially in the context of an expert psychiatric opinion. Although the prosecution notes that the expert's opinion in each case tends to favor the defendant, the prosecution argues that, had the opinion been unfavorable to the defendant, the prosecution would not have objected to the defendant's request for access to the expert before or during the sentencing hearing. Thus, the prosecution argues that the identity of the party seeking access is irrelevant.

### 2. The defendants' arguments

Defendants Beiermann and Jacob, who are both represented by Assistant Federal Defenders, offer similar responses. Both argue that, although the court has discretion to permit the parties to contact the court-appointed expert and to call or to allow the parties to call the expert as a witness at the sentencing hearing, the court is not obligated to do so. Beiermann argues that the court has complied with the explicit requirements of 18 U.S.C. § 3552(c) and 18 U.S.C. § 4247(c) by providing counsel for the parties in each case with the court-appointed expert's report concerning the pertinent defendant. Both defendants point out that nothing in § 3552 requires the court to make the court's expert available for consultation with the parties prior to sentencing or to produce the expert for cross-examination at the sentencing hearing. While defendants Beiermann and Jacob concede that it might be inappropriate for the court to have *ex parte* communications with the expert, they assert that there is no indication that the court has had or intends to seek or rely upon any such *ex parte* communications. These defendants also argue that the court will allow for adequate testing of its expert's opinions and reports by allowing the parties the opportunity at the sentencing hearings to comment upon the expert's opinions and to

offer any contrary evidence of their own. Defendants Beiermann and Jacob also point out that the prosecution has conceded that Dr. Rypma is qualified to offer the opinions stated in his report, because the prosecution has never objected to Dr. Rypma's qualifications or appointment, nor has the prosecution pointed to anything about Dr. Rypma's report that would raise a reasonable question about his methodology or the reliability of his opinions. Defendant Beiermann also argues that, because of the court's experience, the court presumably is aware of the inherent limitations in all psychological evaluations and can determine the proper weight to give to Dr. Rypma's report.

Defendant Kashas also does not believe that the court is required to provide the prosecution with access to Dr. Rypma, albeit for somewhat different reasons. He argues, by analogy to Rule 706 of the Federal Rules of Evidence, which he acknowledges is not directly applicable to sentencing hearings, that the court did not appoint Dr. Rypma as an expert for any evidence in any sentencing hearing, and if he is not used as a testifying expert witness, for evidence purposes, then he is considered a "technical advisor" to the court not subject to deposition or cross-examination.

## II.  LEGAL ANALYSIS

### A.  The Statutory Scheme For
### Court-Appointed Experts At Sentencing

#### 1.      The applicable statutes

Section 3552(c) of Title 18 of the United States Code authorizes appointment by the court of an expert on the defendant's mental condition, for purposes of sentencing, and authorizes disclosure of the expert's report to the parties, as follows:

> **(c) Presentence examination and report by psychiatric or psychological examiners.**—If the court, before or after its receipt of a report specified in subsection (a) [presentence

investigation report by probation office] or (b) [presentence study and report by bureau of prisons] desires more information than is otherwise available to it as a basis for determining the mental condition of the defendant, the court may order the same psychiatric or psychological examination and report thereon as may be ordered under section 4244(b) of this title.

**(d) Disclosure of presentence reports**.—The court shall assure that a report filed pursuant to this section is disclosed to the defendant, the counsel for the defendant, and the attorney for the Government at least ten days prior to the date set for sentencing, unless this minimum period is waived by the defendant. The court shall provide a copy of the presentence report to the attorney for the Government to use in collecting an assessment, criminal fine, forfeiture or restitution imposed.

18 U.S.C. § 3552(c) and (d). Section 4244(b), referenced in § 3552(b) as defining the nature of the examination and report that may be ordered by the court, provides as follows:

**(b) Psychiatric or psychological examination and report.**—Prior to the date of the hearing [on the defendant's mental condition], the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c). In addition to the information required to be included in the psychiatric or psychological report pursuant to the provisions of section 4247(c), if the report includes an opinion by the examiners that the defendant is presently suffering from a mental disease or defect but that it is not such as to require his custody for care or treatment in a suitable facility, the report shall also include an opinion by the examiner concerning the sentencing alternatives that could best accord the defendant the kind of treatment he does need.

18 U.S.C. § 4244(b). Section 4247(c), cited in § 4244(b) as defining the requirements of the report, provides, in pertinent part, that "[a] psychiatric or psychological report ordered pursuant to this chapter shall be prepared by the examiner designated to conduct the psychiatric or psychological examination, shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government. . . ." 18 U.S.C. § 4247(c).

### 2. *Interpretation of the statutes*

The court begins its analysis of the questions presented here by considering whether § 3552 itself or some other part of the statutory scheme requires or permits access by the parties to the court's expert. The parties have cited no controlling interpretation of § 3552 and only limited case law concerning interpretation or application of that statute in ways that are pertinent here. Thus, on the questions of first impression or limited prior consideration by other courts, this court must be guided principally by the rules of statutory interpretation.

"Statutory interpretation is a question of law that [appellate courts] review de novo." *Minnesota Supply Co. v. Raymond Corp.,* 472 F.3d 524, 537 (8th Cir. 2006). This court has, on numerous occasions, pointed out that the first approach to statutory interpretation is the "plain language" of the statute in question. *See, e.g., In re Knudsen*, 389 B.R. 643, 652 (N.D. Iowa 2008); *B & D Land & Livestock Co. v. Veneman,* 332 F. Supp. 2d 1200, 1210 (N.D. Iowa 2004); *Kinkaid v. John Morrell & Co.,* 321 F. Supp. 2d 1090, 1103 n. 3 (N.D. Iowa 2004) (citing such reiterations); *accord United States v. Cacioppo,* 460 F.3d 1012, 1016 (8th Cir. 2006). The Supreme Court describes this rule as the "one, cardinal canon before all others." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253 (1992). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* (citing *Ron Pair Enters., Inc.,* 489

U.S. at 241-42; *United States v. Goldenberg,* 168 U.S. 95, 102-03 (1897); *Oneale v. Thornton,* 10 U.S. (6 Cranch) 53, 68, 3 L.Ed. 150 (1810)). When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Ron Pair,* 489 U.S. at 241 (quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917)); *Cacioppo,* 460 F.3d at 1016 ("Where the language is plain, we need inquire no further.") (citing *Ron Pair,* 489 U.S. at 241).

Unfortunately, as this court has also noted, "plain meaning, like beauty, is sometimes in the eye of the beholder." *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 737 (1985). Therefore, courts may well disagree on the "plain meaning" of a statute, because more than one reading of the statute may be reasonable or at least possible. *See id.* at 736 (although the statute could be read as the appellate court construed it, the statute could also be read in a different way). Consequently, when a statute is capable of more than one reasonable reading (even readings that have been taken by different courts to be the "plain meaning" of the statute), it is ambiguous on its face. *Id.*; *United States v. White Plume,* 447 F.3d 1067, 1074 (8th Cir. 2006) ("Under statutory interpretation, a statute is ambiguous if it is 'capable of being understood in two or more possible senses or ways.'") (quoting *Chickasaw Nation v. United States,* 534 U.S. 84, 90 (2001), in turn quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 77 (1985)). When a statute is ambiguous, the court may seek guidance in the statutory structure, relevant legislative history, congressional purposes expressed in the pertinent act, and general principles of law applicable to the circumstances of the statute to determine the appropriate interpretation. *Id.* at 737. Courts will also construe an ambiguous statute to avoid serious constitutional problems. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. &*

*Constr. Trades Council,* 485 U.S. 568, 575 (1988) (citing *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 499-501, 504 (1979)).

Here, the court finds nothing ambiguous in the statutory scheme concerning the parties' access to information from an expert appointed by the court for purposes of sentencing pursuant to § 3552; rather, the pertinent language is "plain," and the court's interpretation begins and ends with the language of the statute. *Ron Pair*, 489 U.S. at 241-42. Section 3552(d) (and, likewise, § 4247(c)) expressly requires that the parties receive copies of the court-appointed expert's report, and the court finds, and the parties concede, that nothing in the statutory scheme requires the court to provide the parties with any other access to the expert, either before or during the sentencing hearing, or that requires the expert to testify at the hearing. *Compare* 18 U.S.C. § 4247(d) (expressly providing that the person whose mental condition is the subject of the hearing, *inter alia*, "shall be afforded an opportunity to testify"). Nor have the parties offered any reasonable reading of the statute as requiring, or even permitting, access to the court's appointed expert beyond receipt of the expert's report. *See Florida Power & Light Co.*, 470 U.S. at 737 (defining a statute as ambiguous on its face when it is capable of more than one reasonable reading). Moreover, if Congress had intended that the parties would be allowed to contact or cross-examine the court-appointed expert, Congress could easily have so provided, and Congress's failure to include such a requirement or authorization can be construed to mean that there is no such requirement or authorization. *Connecticut Nat'l Bank,* 503 U.S. at 253 ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citing *Ron Pair Enters., Inc.,* 489 U.S. at 241-42; *Goldenberg,* 168 U.S. at 102-03; *Oneale*, 10 U.S. (6 Cranch) at 68). Therefore, the court finds nothing in the statutory scheme that requires or authorizes access by the parties to an expert appointed pursuant to § 3552 beyond receipt of the expert's report. Indeed, to read

such a requirement into the statutory scheme would require a significant leap of judicial activism to judicially amend the statute, to please the prosecutors, in a way that Congress easily could have done, but just as plainly did not do.

Even if the court were somehow to conclude that the § 3552 statutory scheme is ambiguous—presumably by silence—as to whether the parties should have access to the court-appointed expert beyond receipt of the expert's report, the court does not believe that reading the statute to permit access to the court's expert beyond receipt of the expert's reports is required to avoid serious constitutional problems. *See Edward J. DeBartolo Corp,* 485 U.S. at 575 (courts will construe an ambiguous statute to avoid serious constitutional problems). Courts have not deemed examination, cross-examination, or even "confrontation" of sources of information used at sentencing to be essential to determination of the reliability of such information. *See, e.g., United States v. Hansel*, 524 F.3d 841, 847 (8th Cir. 2008) ("Hearsay is admissible in a sentencing hearing and can be used to determine facts if the hearsay has sufficient indicia of reliability.") (citing *United States v. Tucker*, 286 F.3d 505, 510 (8th Cir. 2002)); *United States v. Johnson*, 495 F.3d 951, 976 n.23 (8th Cir. 2007) ("[W]e have held in the context of a non-capital case that 'the confrontation clause does not apply in sentencing proceedings.'") (quoting *United States v. Wallace*, 408 F.3d 1046, 1048 (8th Cir. 2005) (*per curiam*), *cert. denied*, 546 U.S. 1069 (2005)). Thus, the court finds no "constitutional" or other problem with denial of access by the parties to a § 3552 expert beyond receipt of the expert's report. In short, there is a total lack of any claimed constitutional deficiency in the statute that could theoretically provide the relief requested by the prosecution here.

Therefore, the court concludes that the statutory scheme simply does not require or authorize access by the parties to the court's § 3552 expert beyond receipt of the expert's report.

### B. Applicable Case Law

Even though the court finds no statutory requirement or authorization for greater access to a § 3552 expert than receipt of the expert's report, the court will consider, next, whether any courts have read § 3552 to require or authorize greater access to the court's expert or have otherwise found greater access to be appropriate or necessary. The court finds, however, that the limited case law interpreting the court-appointed expert provisions of § 3552, like the statute itself, is totally lacking in support for the prosecution's assertion that it should be allowed expansive access to the court-appointed expert either before or during the sentencing hearing. Nevertheless, the court deems it appropriate to explore what little case law there is in some detail.

### 1. United States v. Craven

Both parties point to *United States v. Craven*, 239 F.3d 91 (1st Cir. 2001), as essentially the only appellate decision discussing issues of any relevance here related to an expert appointed pursuant to § 3552.◻[1] On appeal in that case, the prosecution argued that the lawyers were not privy to a one-hour *ex parte* conversation that the sentencing court had with its appointed expert just before imposing sentence; that the substance of the sentencing court's discussion with the expert was not placed in the record; and that the prosecution had no opportunity either to cross-examine the expert about or to respond to

---

[1]Indeed, the parties have not cited, and the court has not found, any other case law analyses of the court-appointed expert provisions of § 3552 that are pertinent here. The prosecution does cite *United States v. Kennedy*, 499 F.3d 547, 551-52 (6th Cir. 2007), as recognizing the court's authority to order an expert study of the defendant, pursuant to § 3552, for purposes of sentencing, but the prosecution acknowledges that the court in that case held only that the sentencing court could consider the defendant's refusal to complete a psychosexual examination in selecting the appropriate sentence. None of the defendants in these cases have refused to complete the psychosexual examination ordered by the court.

the opinions that the expert expressed in the *ex parte* communication.  *Craven*, 239 F.3d at 101.

As to the first two issues, the appellate court agreed with the prosecution that a sentencing court may not utilize an *ex parte* conversation with a court-appointed expert as a means to acquire information critical to a sentencing determination and then rely on that information in fashioning the defendant's sentence.  *Id.*  The appellate court relied upon the general disfavor for *ex parte* communications between judges and court-appointed experts, noting that "such *ex parte* contacts can create situations pregnant with problematic possibilities."  *Id.* at 102.  The appellate court also observed,

> Nor is there any convincing reason for exempting communications undertaken in the course of sentencing from this general prohibition.  In point of fact, the statutory provision under which the district court recruited [the expert] does not contemplate substantive ex parte communications between the appointer and the appointee.  Rather, it requires that the expert file with the court "a written report of the pertinent results of the study," 18 U.S.C. § 3552(b), and the court must ensure that the report is disclosed to the defendant, his counsel, and the prosecutor prior to the disposition hearing, *id.* § 3552(d).  While the statute does not deal explicitly with the procedure to be followed if the court requires information over and above that contained in the original report, it follows logically that the same or equivalent safeguards (i.e., a written response delivered to all parties in advance of sentencing) should obtain. *Accord United States v. Blythe,* 944 F.2d 356, 360 (7th Cir. 1991) (determining that section 3552(d)'s framework for review by all interested parties applies to an addendum to the presentence report).

*Craven*, 239 F.3d at 102.  Consequently, the court held as follows:

> [I]f a sentencing court desires additional information from a court-appointed expert, it must either (1) make a written

18

request for a supplemental report and provide that supplemental report to the parties in accordance with the procedure described in 18 U.S.C. § 3552(d), or (2) bring the expert into court to be questioned in the presence of the parties. Such an even-handed approach not only honors what we believe to be the intent of the drafters of section 3552, but also fits neatly with the prevailing view as to how courts should communicate with court-appointed experts on matters of substance.

*Craven*, 239 F.3d at 102 (citations omitted) (also finding that "[t]he court below acted in a manner inconsistent with this prudential rule and therefore erred").

In the cases now before this court, however, this court has not had any *ex parte* contact with the appointed expert. Thus far, the court has only received the expert's reports, and those reports have been properly shared with the parties as required by § 3552(d). *Compare Craven*, 239 F.2d at 102; 18 U.S.C. § 3552(d). Nor does the court contemplate engaging in any such *ex parte* contact with the appointed expert. If the court finds that it requires further information from the expert, the court will take heed of the procedures required in such circumstances by the court in *Craven*, and "either (1) make a written request for a supplemental report and provide that supplemental report to the parties in accordance with the procedure described in 18 U.S.C. § 3552(d), or (2) bring the expert into court to be questioned in the presence of the parties." *Id.*

The appellate court in *Craven* also took up the prosecution's contention in that case that the sentencing court had given the prosecution no opportunity either to cross-examine the expert or to respond to his opinions. *Id.* at 101 (third alleged error as to the sentencing court's reliance on an *ex parte* communication with a court-appointed expert). The appellate court found that the sentencing court had revealed that it had spoken with its appointed expert *ex parte* only immediately before sentencing the defendant, so that the

prosecution had no realistic opportunity to challenge the expert's conclusions. *Id.* at 103. Even so, the appellate court in *Craven* did not identify cross-examination as the *only* means for challenging the expert's conclusions, and certainly said nothing about giving any party the opportunity for any *ex parte* or other contact with the expert prior to the sentencing hearing. *Id.* Rather, the appellate court in *Craven* held that the sentencing court had not afforded the prosecution a "realistic opportunity to challenge the expert's conclusions *by cross-examination or otherwise.*" *Id.* (emphasis added). In so holding, the appellate court pointed out that it was the *last minute disclosure* of the sentencing court's *ex parte* communication with its appointed expert that had prevented a realistic opportunity to challenge the expert's conclusions, and the appellate court also explained that the lack of any contemporaneous record of the *ex parte* conversation complicated harmless-error review. *Id.* ("Third, since the court sentenced Craven immediately after it revealed that it had spoken with [its appointed expert] ex parte, the government had no realistic opportunity to challenge the expert's conclusions by cross-examination or otherwise. Fourth, and finally, there is no contemporaneous record of the conversation—only the district court's oral summary of its contents—thereby complicating harmless-error review."). Thus, the *timing* and the *completeness* of the disclosure of the expert's opinions upon which the sentencing court relied were the problems in *Craven*.

Here, unlike the situation in *Craven*, the prosecution cannot complain that the disclosures of the court-appointed expert's opinions and reports have been so untimely that the prosecution has had no realistic opportunity to challenge the expert's conclusions. Rather, the prosecution has had Dr. Rypma's report for each defendant for some time now, well in advance of each defendant's sentencing hearing. Thus, the prosecution has had ample opportunity to request further examination of each defendant by its own expert and otherwise to prepare to challenge Dr. Rypma's opinions and reports. *Compare id.* (the

sentencing court's untimely disclosure of the *ex parte* communications with the appointed expert prevented the prosecution from challenging the expert's conclusions).

As to sufficiency of the disclosures of the expert's opinions, *see id.* (the sentencing court also provided only an oral summary of the *ex parte* communications, not a contemporaneous record, so that review was complicated), the prosecution intimates only that it would like to develop relevant issues, such as the scientific or factual bases for the expert's opinions, because the expert's opinions in each case appear to be based in significant part on each defendant's self-reported conduct and history, and that the prosecution would like to explore whether the expert's opinions carry sufficient indicia of reliability to justify reliance on them. However, the prosecution has not demonstrated any insufficiency in the expert's reports of the disclosure of the scientific or factual bases for his opinions or the extent to which the expert has relied on each defendant's self-reported conduct and history, where the expert's reports indicate the bases for his conclusions and the sources of his information. Again, the statutory scheme itself suggests that presentencing disclosure of the appointed expert's report is sufficient to afford the parties an opportunity to challenge such an expert's conclusions, because that statutory scheme provides only for timely disclosure of the expert's report, not for any other access to the expert. *See* 18 U.S.C. § 3552(d) (requiring disclosure of the court-appointed expert's report "at least ten days prior to the date set for sentencing"); 18 U.S.C. § 4247(c) (requiring disclosure of the expert's report to the parties, but not specifying a time frame for such disclosure). Again, nothing in the statutory scheme or this ruling would preclude a party from hiring its own expert to perform a psychosexual assessment of any defendant in order to challenge the sufficiency of the court-appointed expert's scientific or factual bases for his opinions or otherwise to challenge the correctness of the court-appointed expert's opinions. As this court observed at the outset of this decision, it would be much

easier for the prosecution than for any defendant to hire its own expert, because the prosecution seemingly has unlimited funds to expend on litigating cases, and the prosecution has easy, and probably free, access to a host of government experts within the Department of Justice who already perform psychosexual assessments.

Thus, while *Craven* does suggest that the parties must receive sufficient, timely disclosure of the expert's opinions upon which the sentencing court intends to rely, in order to afford the parties a realistic opportunity to challenge the expert's conclusions, it does not mandate any specific kind of access by the parties to the court's appointed expert, and § 3552 itself requires only timely disclosure of the expert's report. Here, the prosecution has not shown that Dr. Rypma's disclosures are either so untimely or so incomplete that some other access to him and his opinions, beyond disclosure of his reports, is required.

### 2. *Burns v. United States*

The prosecution also cites *Burns v. United States*, 501 U.S. 129, 134 (1991), for the more general proposition that the purpose of full disclosure of reports written for the court for purposes of sentencing is to allow focused, adversarial development of the factual and legal issues relevant to determination of the appropriate sentence. The prosecution then asserts that, without prior access to the court's expert or the opportunity to cross-examine that expert at the sentencing hearing, such focused, adversarial development of the issues raised in the expert's report is not possible.

As some of the defendants point out, however, *Burns* did not involve the question of access to any expert, but access to a presentence investigation report by the United States Probation Office pursuant to Rule 32 of the Federal Rules of Criminal Procedure. *See Burns*, 501 U.S. at 134 ("As amended by the Sentencing Reform Act, Federal Rule of Criminal Procedure 32 provides for focused, adversarial development of the factual and

legal issues relevant to determining the appropriate Guidelines sentence. Rule 32 frames these issues by directing the probation officer to prepare a presentence report addressing all matters germane to the defendant's sentence. *See* Fed.Rule Crim.Proc. 32(c)(2). At least 10 days before the sentencing, the report must be disclosed to the parties, *see* Rules 32(c)(3)(A), (C), whom the Guidelines contemplate will then be afforded an opportunity to file responses or objections with the district court, see Guidelines § 6A1.2, and official commentary. Finally, Rule 32(a)(1) provides that '[a]t the sentencing hearing, the court [must] afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.'") (footnotes omitted). Furthermore, to the extent that *Burns* is illuminating on the question of access to a court-appointed expert, it suggests that what is necessary to permit a "focused, adversarial development of the issues" raised in any such expert's report is not the opportunity for access to the person who prepared the report prior to the sentencing hearing or an opportunity to examine or cross-examine that person at the sentencing hearing, but timely disclosure of the report, an opportunity to file responses and objections, and "an opportunity to comment" upon the recommendations in the report. *Id.*

Certainly, nothing in *Burns* requires that the parties be given the opportunity for access to a court-appointed expert prior to the sentencing hearing or the opportunity to examine or cross-examine that expert at the sentencing. Rather, *Burns* suggests, once again, that the parties will be given an adequate opportunity for "focused, adversarial development of the factual and legal issues" relevant to the determination of the appropriate sentence, if the expert's report is timely disclosed. *Id.* (detailing the requirements, under Rule 32, for disclosure of the probation officer's PSIR, the opportunity to file objections, and the opportunity to comment upon the probation officer's

recommendations). Thus, *Burns* is consistent with, and does not go beyond, the statutory scheme under § 3552, which suggests that presentencing disclosure of the appointed expert's report is sufficient to afford the parties an opportunity to challenge such an expert's conclusions and, thus, to engage in the appropriate focused, adversarial development of the issues in the case, because *Burns* and the statutory scheme under § 3552 both provide only for timely disclosure of the expert's report, not for any other access to the expert. *See id.*; 18 U.S.C. § 3552(d); 18 U.S.C. § 4247(c).

Thus, *Burns* will not carry the day for the prosecution's request for more extensive access to the court's expert.

### 3. *Other decisions and general propositions*

Other decisions cited by the prosecution stand for two propositions that the court readily embraces, that cross-examination is a useful tool to discover the truth, *see, e.g., Ford v. Wainwright*, 477 U.S. 399 (1986), and that the standard for consideration of information at a sentencing hearing is whether that information has sufficient indicia of reliability to support its probable accuracy, *see, e.g.*, *United States v. Garth*, 540 F.3d 766, 776 (8th Cir. 2008). It does not follow from these propositions, however, that access to an expert before a sentencing hearing or cross-examination of that expert at the sentencing hearing is essential to determine the reliability and probable accuracy of the court-appointed expert's opinions in his report.

As this court observed above, courts have not deemed examination, cross-examination, or even "confrontation" of sources of information used at sentencing to be essential to determination of the reliability of such information. *See, e.g., Hansel*, 524 F.3d at 847 ("Hearsay is admissible in a sentencing hearing and can be used to determine facts if the hearsay has sufficient indicia of reliability.") (citing *Tucker*, 286 F.3d at 510); *Johnson*, 495 F.3d at 976 n.23 ("[W]e have held in the context of a non-capital case that

24

'the confrontation clause does not apply in sentencing proceedings.'") (quoting *Wallace*, 408 F.3d at 1048). Nor is a party entitled to a full *Daubert*-style determination of the reliability of expert evidence at sentencing, even in a death-penalty case. *United States v. Fields*, 483 F.3d 313, 342-43 (5th Cir. 2007) (noting, *inter alia*, that "[n]o Circuit that we are aware of has applied *Daubert [v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993),]* to sentencing," and declining to establish such a requirement). Thus, the kind of access that the prosecution seeks is simply not required, under either sentencing standards or the Constitution.

Here, the court finds that the prosecution has never challenged Dr. Rypma's qualifications to give an expert opinion on the issues submitted to him, and the court finds that Dr. Rypma's reports themselves provide sufficient indicia of the reliability of his conclusions for the court to consider them at the sentencing hearings. *See, e.g., Garth*, 540 F.3d at 776 (information used at sentencing must have sufficient indicia of reliability). Again, the prosecution has had ample opportunity to request further examination of each defendant by its own expert and otherwise to prepare to challenge the reliability of Dr. Rypma's opinions and reports. Thus, the court does not find cases standing for general propositions concerning the value of cross-examination or the reliability requirement for information considered at sentencing to warrant cross-examination of Dr. Rypma at the sentencing hearings in these cases.

Moreover, in my sentencing of over 2,600 defendants, during my fourteen-plus years on the federal bench, the prosecution has frequently relied on the following written documents in an attempt to enhance defendants' sentences without providing the drafters for cross-examination: police reports and a voluminous variety of charging documents from local jurisdictions across the United States offered to prove defendants' criminal histories and the underlying facts of their convictions; victim impact statements;

investigative reports of federal and state law enforcement officers; debriefing statements of defendants and other witnesses; and, to a lesser extent, medical records and physician notes and reports. These kinds of information certainly have no more indicia of reliability—and may have substantially less—than a court-appointed expert's report, yet the prosecution has been quite happy to offer such information without feeling the need for cross-examination of the drafters.

What the prosecution suggests here is no less than a fundamental and unwarranted change in the requirements for use of documents and reports generally, and court-appointed experts' reports in particular, at sentencing, which will unduly complicate, delay, and add to the expense of sentencing proceedings. More specifically, the kind of access that the prosecution requests would result in a substantial cost shifting that would require the judiciary to absorb significant increases in expert's fees to satisfy the prosecution's appetite for additional information. Nothing in the statutory scheme or the interests of justice requires the court to absorb such additional costs, where the prosecution can obtain its own expert, if the prosecution deems it necessary to do so, to respond to the opinions of the court's expert.

Again, the statutory scheme under § 3552 provides only for timely disclosure of the expert's report, not for any other access to the expert, *see* 18 U.S.C. § 3552(d); 18 U.S.C. § 4247(c), and the prosecution has failed to show that the statutory scheme is deficient.

### III. CONCLUSION

The prosecution has failed to convince the court that the parties are entitled to, or that it is appropriate to grant the parties, access before or during each defendant's sentencing hearing to the court's expert, who has performed a psychosexual assessment of each of the defendants pursuant to 18 U.S.C. § 3552(c) and whose report in each case

has been timely provided to the parties. The court also finds that no circumstances have thus far arisen that would require the court to obtain further information from its expert, but if such circumstances arise, the court will either (1) make a written request for a supplemental report and provide that supplemental report to the parties in accordance with the procedure described in 18 U.S.C. § 3552(d), or (2) bring the expert into court to be questioned in the presence of the parties.

THEREFORE, the prosecution's request, in each case, for the opportunity to collect information from and to speak to Dr. Rypma prior to each sentencing hearing and to call Dr. Rypma as a witness at each sentencing hearing is **denied**.

**IT IS SO ORDERED.**

**DATED** this 31st day of October, 2008.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA