**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

BRANDON J. BEIERMANN,

Defendant.

No. CR 07-4018-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING SENTENCING**

———————————

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A. The Charges And The Guilty Pleas* . . . . . . . . . . . . . . . . . . . . . . 3
   *B. Offense Conduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *C. Defendant's Personal Characteristics* . . . . . . . . . . . . . . . . . . . 7

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   *A. The Methodology For Determination Of A Sentence* . . . . . . . . . . . . 10
   *B. Determination Of The Guideline Sentence* . . . . . . . . . . . . . . . . . 14
   *C. Determination Of Whether To Depart Or Vary* . . . . . . . . . . . . . . . 15
      *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 16
      *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
         *a. Judicial rejections of the child pornography*
            *guideline* . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
         *b. The degree of deference due the guideline* . . . . . . . . 21
         *c. Categorical rejection of the guideline* . . . . . . . . . . . 26
         *d. The reasoned alternative basis for sentencing* . . . . . . 30
   *D. Consideration Of § 3553(a) Factors* . . . . . . . . . . . . . . . . . . . 34
      *1. The nature and circumstances of the offense* . . . . . . . . . . . 35
      *2. The history and characteristics of the defendant* . . . . . . . . 37
      *3. The need for the sentence imposed* . . . . . . . . . . . . . . . . 39
      *4. The kinds of sentences available and the sentencing ranges*
        *for similar offenses* . . . . . . . . . . . . . . . . . . . . . . 44

     5.     *Any pertinent policy statement* . . . . . . . . . . . . . . . . . . . . . 45
     6.     *The need to avoid unwarranted disparities* . . . . . . . . . . . . . 45
     7.     *The need to provide restitution* . . . . . . . . . . . . . . . . . . . . . 50

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

This case, one of approximately 2,200 sentencings over which I have presided in nearly fifteen years on the federal bench, came before me for sentencing of a defendant who had been an Eagle Scout, with no criminal history points, for offenses involving possessing, receiving, transporting, and shipping child pornography in violation of 18 U.S.C. § 2252A. This case raises the question of the merits of the advisory United States Sentencing Guideline for defendants convicted of child pornography offenses, U.S.S.G. § 2G2.2, where, *inter alia*, this guideline purportedly is the result of congressional mandates rather than the United States Sentencing Commission's exercise of its institutional expertise and empirical analysis.[1] Although I find that the defendant's offenses are very serious, I nevertheless find, as have several other district court judges, that a sentence in strict accordance with the advisory guideline for child pornography offenses would be at odds with the "parsimony provision" of the federal sentencing statute,

---

[1] Three other cases involving two other defendants charged with various child pornography offenses in violation of 18 U.S.C. §§ 2252 and 2252A and, consequently, raising the same question, are also pending before me for sentencing: *United States v. Kelly Leonard Jacob*, No. CR 07-2002-MWB, *United States v. Kelly Leonard Jacob*, No. CR 07-2017-MWB, and *United States v. Matthew Orval Kashas*, Case No. CR 07-4075-MWB.

18 U.S.C. § 3553(a), which directs me to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. This memorandum, therefore, explains my rationale for the sentence imposed.

## I. INTRODUCTION

### A. The Charges And The Guilty Pleas

In an Indictment (docket no. 2) handed down on February 28, 2007, defendant Brandon J. Beiermann was charged with the following offenses: **Count 1** charged that, from in or about September 2005, through about January 11, 2006, defendant Beiermann knowingly transported and shipped and attempted to transport and ship, in interstate and foreign commerce, visual depictions of minors engaged in sexually explicit conduct, all in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1); **Count 2** charged that, from in or about September 2005, through about January 11, 2006, defendant Beiermann knowingly received and attempted to receive visual depictions of minors engaged in sexually explicit conduct, said visual depictions having been transported in interstate or foreign commerce, all in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1); and **Count 3** charged that, on or about January 11, 2006, defendant Beiermann knowingly possessed and attempted to possess visual depictions of minors engaged in sexually explicit conduct, said visual depictions having been produced using materials that had been shipped and transported in interstate and foreign commerce, namely, a Hewlett Packard computer that was manufactured outside the state of Iowa, all in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

Eventually, on September 5, 2007, defendant Beiermann entered guilty pleas to all three counts against him, pursuant to a plea agreement, before a magistrate judge of this

district.  On September 20, 2007, I accepted the magistrate judge's recommendation to accept defendant Beiermann's guilty pleas.

On December 26, 2007, the prosecution filed a motion for upward departure (docket no. 34), but later withdrew that motion on November 14, 2008.  *See* docket no. 51.  On February 15, 2008, defendant Beiermann filed a motion for downward variance (docket no. 37).  On April 9, 2008, I entered an order (docket no. 41) directing defendant Beiermann to submit to a presentence examination and study, to include a psychosexual assessment.  By order (docket no. 43) dated May 15, 2008, I appointed Dr. Craig Rypma to perform the evaluation in question.  In a memorandum opinion and order (docket no. 50), filed October 31, 2008, *see United States v. Beiermann*, 584 F. Supp. 2d 1167 (N.D. Iowa 2008), I denied the prosecution's request, in this and the three other child pornography cases pending before me, for the opportunity to collect information from and to speak to Dr. Rypma prior to each sentencing hearing and to call Dr. Rypma as a witness at each sentencing hearing.

Defendant Beiermann's sentencing hearing began on November 19, 2008, but I continued it, after hearing the parties' arguments, rather than imposing sentence that day, so that I could give due consideration to my concerns with the applicable Sentencing Guideline and determine the appropriate sentence.  On February 13, 2009, shortly before the scheduled completion of the sentencing hearing, the prosecution filed, without prior leave of court, a lengthy consolidated brief in this case and a similar case[2] on the issues raised in the Stabenow article, cited *infra*.  By order (docket no. 61) dated February 17, 2009, I denied the prosecution leave to file a brief in excess of the page limit imposed by local rules as a sanction for failure to seek leave to file such a brief in this case, and

---

[2]*United States v. Matthew Orval Kashas*, Case No. CR 07-4075-MWB.

untimely filing of such a brief after requesting leave to do so in the other case.[3] I set a deadline of February 18, 2009, for the prosecution to file a brief in compliance with the page limit in the applicable local rule and also set a deadline of February 20, 2009, for any response by defendant Beiermann to the prosecution's unexpected brief. The prosecution refiled its considerably shortened version of the brief (docket no. 62) on February 18, 2009. Beiermann filed a response (docket no. 64) on February 20, 2009. I have considered these additional briefs in my final determination of Beiermann's sentence.

Defendant Beiermann's sentencing hearing was completed on February 23, 2009, with further arguments on the variance issue, the defendant's allocution, and the imposition of sentence. I now state in some detail the reasons for the sentence imposed, which were only touched on at the conclusion of defendant Beiermann's sentencing, with the intention that this Memorandum Opinion And Order Regarding Sentencing will be incorporated by reference, in its entirety, into the Statement of Reasons and Judgment in this case.

### B.  Offense Conduct

The Presentence Investigation Report (PSIR) reveals the following offense conduct, to which Beiermann has not objected. On December 27, 2005, the National Center for Missing and Exploited Children (NCMEC) received a tip from the Custodian of Records

---

[3]In the same order, I directed counsel for the defendant in the *Kashas* case to show cause why he should not be sanctioned for failure to file a brief in response to the court's January 13, 2009, order establishing a due date for the parties' briefs on issues raised in the Stabenow article, because the January 13, 2009, order plainly required him to file a brief as well, if he was in doubt as to whether he was required to file such a brief, he failed to clarify that the order required him to do so, he failed to request an extension of time to file such a brief, and the court believes that reasonably competent counsel would have filed a brief on the cutting-edge sentencing issues in these cases when afforded the opportunity to do so.

for Yahoo! Inc. about Beiermann's possible involvement in the distribution of child pornography. This information was then forwarded to the Iowa Division of Criminal Investigation and the Clay County Sheriff's Department for investigation.

The investigation revealed that, on October 20, 2005, Beiermann received a visual depiction of child pornography on his home computer. The depiction showed two actual, naked, prepubescent minor females, one laying on her back and exposing her vaginal area, and one placing her face near the other's vaginal area. The investigation further verified that, on December 19, 2005, Beiermann used his home computer and the user name "brandylesbian69" to transmit five depictions of child pornography to a newsgroup maintained by Yahoo! on computer servers outside of the state of Iowa. These depictions revealed an actual, naked, prepubescent minor female laying on her stomach with her legs spread apart and the camera focused on her anus and vaginal area; a prepubescent female sitting on the floor exposing her vaginal area; a prepubescent female undressed from the waist down, sitting in a chair with her legs spread apart and holding a pen in her hand; and a photo of what appears to be a prepubescent vagina with a child's fingers spreading it open. According to Yahoo's records, the defendant's profile under the name "brandylesbian69" indicated that his interests included young girls, incest, nudism, naturalism, pussy, and breasts. The profile also stated, "I prefer to trade pics on 'Hello.' My user name is lesbianbrandy." "Hello" is a type of internet service specifically geared to share images.

On January 11, 2006, law enforcement officers executed a search warrant at the defendant's residence. Officers seized the defendant's Hewlett Packard Pavilion personal computer and found that it contained more than 2,600 images and 25 videos of child pornography, which had been transmitted, via internet newsgroups, file sharing websites, and electronic mail, between September 2005 and January 2006. Several of these images

portrayed sadistic and masochistic conduct. Of particular note are images portraying a dog having sexual intercourse with a prepubescent female; an adult male penis penetrating an infant's vagina; an adult male digitally penetrating a prepubescent female who had been tied up; and a naked, prepubescent female with "slut hurt me" written in red on her chest and a knife pointed at her vagina. Among the images recovered, at least 377 showed known victims from at least 54 different known series of child pornography.

Following the search, the defendant was questioned and admitted to possessing child pornography. He told law enforcement officers that he preferred pictures of "soft stomachs" and "soft vagina areas." He admitted that he had started trading child pornography in September 2005. He stated that he originally registered as a male in his internet profile, but throughout the process, he had learned that if he profiled himself as a female, people were more willing to trade pornography, specifically, child pornography, with him.

## C. Defendant's Personal Characteristics

The following description of defendant Beiermann's personal characteristics is drawn primarily from the PSIR, a report from a psychosexual assessment by Catholic Charities to which Beiermann voluntarily submitted, and the report of the court's expert, Craig B. Rypma, Ph.D. and MBA, a licensed clinical psychologist, who interviewed and tested the defendant.

Defendant Beiermann was between 25 and 26 years old at the time that he committed the charged offenses in 2005 and 2006. Apart from convictions for criminal mischief when he was 16, he had no prior criminal history. He had a high school education, was married, apparently happily, with two children (a boy and girl under the

age of 10), and was living in Holstein, Iowa. He was last employed as an assembly line worker at $12.40 per hour.

Beiermann's parents divorced when he was 3, and he was raised by his mother. His father, who was an alcoholic, died in 2005. His mother remarried and lives with her husband in Fremont, Nebraska. Beiermann's stepfather is a recovering alcoholic who has been sober for more than 20 years. Beiermann's relationship with his mother and stepfather is good, although he reported that he was sexually abused by his stepfather's brother over a period of at least one year between the ages of 6 and 7. Beiermann denies that he was ever coerced to touch his uncle in a sexual manner, however. Beiermann describes his school years as "something he did to simply get through it," as a period during which he had few friends, and as a time during which he was a "loner." He did not participate in school activities or play any sports, but he was an Eagle Boy Scout. He also received a "Doing What's Right" Award from the Fremont Area Chamber of Commerce in 1996 for delivering a lost five-year-old to the safety of his home. In 1999, he married and moved to Holstein, Iowa.

Beiermann denies that he has ever been sexually involved with anyone other than his wife. He reports that both he and his spouse used pornography to enhance sexual arousal and that his involvement with child pornography developed from his use of the internet to look for new sources of pornography. Beiermann reported to Dr. Rypma that his primary attraction was to images of females ages 12 to 17 showing a "full body pose." Beiermann also admitted to Dr. Rypma that he knew that what he was doing was wrong and kept his activity from his spouse, because he was ashamed. On the other hand, Dr. Rypma noted that, in a prior evaluation by Catholic Charities, Beiermann admitted that he continued his illegal internet activity even after being warned by his internet provider that he was accessing illegal sites and, therefore, after he knew that others were aware of

this activity. Beiermann also reported to evaluators at Catholic Charities that his illegal internet use occurred 3 to 4 days a week for 3 to 4 hours each day. Beiermann told Dr. Rypma that he did not recall images of sado-masochism and denied an interest in such activities.

Beiermann admits to social drinking and teenage experimentation with marijuana on two occasions, but denies using any other illicit drugs. He reported no present or past history of mental or emotional health concerns. Dr. Rypma found no apparent paraphilias, but diagnosed pedophilia, with sexual attraction to females, but non-exclusive; adult antisocial behavior; and problems related to interaction with the legal system. However, he rejected a diagnosis of a personality disorder.

Dr. Rypma and the evaluators at Catholic Charities agree that Beiermann's prognosis for effective treatment is positive. More specifically, in his "risk assessment," Dr. Rypma concluded as follows:

> Mr. Beiermann is not likely to engage in future acts of predatory sexual violence. Based on this evaluator's review of the records, interview, and on the knowledge that Mr. Beiermann will be supervised upon release, it is my opinion to a reasonable degree of professional certainty that Mr. Beiermann currently does not pose a serious risk for predatory sexual violence. He does however need to complete a formal [Sex Offender Treatment] Program; his understanding of his offense is limited and his social skills are such that he is likely to benefit from referral to such a program.

Dr. Rypma's Risk Evaluation at 9.

## II.  LEGAL ANALYSIS

### A.  The Methodology For Determination Of A Sentence

The Eighth Circuit Court of Appeals recently reiterated the three-step methodology for determination of a defendant's sentence, as follows:

> The first step in the sentencing process is to determine the proper guidelines range for the defendant's sentence.  *Gall v. United States,* ---U.S. ----, 128 S. Ct. 586, 596, 169 L. Ed. 2d 445 (2007); *[United States v.] Thundershield,* 474 F.3d [503,] 506-07 [(8th Cir. 2007)].   A court should then consider whether a departure or a variance is appropriate and apply the factors in 18 U.S.C. § 3553(a).  *Gall,* 128 S. Ct. at 596-97; *Thundershield,* 474 F.3d at 506-07.

*United States v. Roberson*, 517 F.3d 990, 993 (8th Cir. 2008); *United States v. Rivera*, 439 F.3d 446, 447 (8th Cir. 2006) ("In  *United States v. Haack,* 403 F.3d 997, 1002-03 (8th Cir. 2005), we outlined the procedure a district court is to follow in imposing a post-*Booker* sentence.   First, the district court should determine the Guidelines sentencing range.  Second, the district court should determine whether any traditional departures are appropriate.   Third, the district court should apply all other section 3553(a) factors in determining whether to impose a Guidelines or non-Guidelines sentence.").  Although "a court of appeals may apply a presumption of reasonableness when conducting substantive review of a sentence within the advisory range, 'the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.'"  *United States v. Henson*, 550 F.3d 739, 740 (8th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, ___, 127 S. Ct. 2456, 2465 (2007)).  The Supreme Court has recently reiterated this point, noting that "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," and that "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."

*Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (*per curiam*) (emphasis in the original).

As the Eighth Circuit Court of Appeals has also explained,

> Under *Gall,* we may no longer require extraordinary circumstances to justify a sentence outside the Guidelines range. *Gall,* 128 S. Ct. at 595. However, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Id.* at 594. If, after an "individualized assessment based on the facts presented," the district court "decides that an outside-Guidelines sentence is warranted, [the district court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 597. It is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.* "[A]n abuse of discretion may occur when (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Haack,* 403 F.3d 997, 1004 (8th Cir. 2005) (internal quotation marks and citation omitted). *See also Gall,* 128 S. Ct. at 597.

*United States v. Kane*, ___ F.3d ___, ___, 2009 WL 80228, *2 (8th Cir. Jan. 14, 2009).

As to grounds for variance from a guidelines sentence, "[i]n *Kimbrough [v. United States*, 552 U.S. ___, 128 S. Ct. 558 (2007)], the Supreme Court held that it was not an abuse of discretion for a district court to vary from the Guidelines based on its policy disagreement concerning the disparity between crack and powder cocaine sentences." *United States v. Battiest*, ___ F.3d ___, ___, 2009 WL 160943, *4 (8th Cir. Jan. 26,

2009) (citing *Kimbrough*, 128 S. Ct. at 575-76).  Thus, "policy disagreements" may provide the basis for a variance from a guidelines sentence, even in a "mine-run" case. *Kimbrough*, 128 S. Ct. at 563.

The Supreme Court took up the issue of the district court's authority to vary from guidelines sentences most recently in *Spears v. United States*, ___ U.S. ___, 2009 WL 129044 (Jan. 21, 2009) (*per curiam*), which also involved the disparity between crack and powder cocaine sentences.  In *Spears*, the Court explained "the point of *Kimbrough*" to be "a recognition of district courts' authority to vary from the crack cocaine Guidelines based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears*, 2009 WL 129044 at *2.  The Court also reiterated that it was unnecessary to consider whether variances in cases "outside the heartland" are entitled to greater respect than variances in cases "inside the heartland" and, thus, necessarily based on a policy or "categorical" disagreement with the Guidelines, where the Guidelines in question "'do not exemplify the Commission's exercise of its characteristic institutional role.'" *Id.* (quoting *Kimbrough*, 128 S. Ct. at 563).  Furthermore, the Court clarified in *Spears* that if the sentencing court disagrees with the 100:1 ratio for crack cocaine cases, the sentencing court also necessarily has the authority to adopt some other ratio to govern a "mine-run case." *Id.* at *3. Specifically, the Court clarified "that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Id.*  The Court found that adopting the alternative of barring such categorical variances "would likely yield one of two results":

> Either district courts would treat the Guidelines' policy embodied in the crack-to-powder ratio as mandatory, believing that they are not entitled to vary based on "categorical" policy disagreements with the Guidelines, or they would continue to

> vary, masking their categorical policy disagreements as "individualized determinations." The latter is institutionalized subterfuge. The former contradicts our holding in *Kimbrough*. Neither is an acceptable sentencing practice.

*Spears*, 2009 WL 129044 at *3. The Court found, further, that the sentencing court had based its 20:1 replacement ratio on two well-reasoned decisions by other courts, which had, in turn, reflected the Sentencing Commission's expert judgment that a 20:1 ratio would be appropriate in a "mine-run case." *Id.*

*Spears* specifically addressed only a sentencing court's authority to reject the 100:1 crack-to-powder ratio under the guidelines, categorically, and on policy grounds, and to adopt some other ratio to govern "mine-run cases." Nevertheless, the powerful implication of *Spears* is that, in other "mine-run" situations, the sentencing court may also reject guidelines provisions on categorical, policy grounds—particularly when those guidelines provisions "'do not exemplify the Commission's exercise of its characteristic institutional role,'" *id.* (quoting *Kimbrough*, 128 S. Ct. at 563)—and may, consequently, adopt some other well-reasoned basis for sentencing.

On the other hand, the Eighth Circuit Court of Appeals has recognized, in a case involving conviction on multiple child pornography counts, that a sentencing court could effectuate a life sentence under the advisory guidelines, in excess of the statutory maximum sentence of 20 years for any one count. *See United States v. Betcher*, 534 F.3d 820, 827 (8th Cir. 2008). The appellate court found that, after the sentencing court had given due consideration to the sentencing factors set out in 18 U.S.C. § 3553(a) and had recognized that the guidelines were advisory, the sentencing court had permissibly imposed *consecutive* statutory maximum sentences on all counts to ensure that the defendant served a term of lifetime imprisonment, as the Sentencing Guidelines advised. *Id.*

## B.  Determination Of The Guideline Sentence

The first step in the sentencing process is to determine the proper guideline range for the defendant's sentence.  *Roberson*, 517 F.3d at 993; *Rivera*, 439 F.3d at 447.  The applicable Sentencing Guideline for the child pornography offenses at issue here is U.S.S.G. § 2G2.2.  That guideline establishes a base offense level of 18 for "possession" offenses in violation of 18 U.S.C. §§ 2252(a)(4) and 2252A(a)(5) (as charged in **Count 3** here), and a base offense level of 22 for all other offenses (such as the "transporting and shipping" offense in violation of 18 U.S.C. § 2252A(a)(1) charged in **Count 1** here and the "receiving" offense in violation of 18 U.S.C. § 2252(a)(2)(A) charged in **Count 2** here).  U.S.S.G. § 2G2.2(a).  It then imposes increases (and more rarely, decreases) in the offense level based on various specific characteristics:  a decrease of 2 levels for receipt without intent to distribute, § 2G2.2(b)(1); an increase of 2 levels if the material involved a prepubescent minor or a minor who had not attained the age of 12, § 2G2.2(b)(2); increases from 2 to 7 levels, depending upon the nature of any distribution involved, *e.g.*, whether for pecuniary gain or for something of value, and whether to a minor or to a minor to induce other illegal activity, § 2G2.2(b)(3)(A)-(F); an increase of 4 levels if the material involved portrays sadistic or masochistic conduct or other depictions of violence, § 2G2.2(b)(4); an increase of 5 levels if the defendant engaged in a pattern of similar activity, § 2G2.2(b)(5); an increase of 2 levels, if the offense involved use of a computer, § 2G2.2(b)(6); and an increase of 2 to 5 levels depending upon the number of images involved in the offense, with an explanation in the commentary that each video should be considered to have 75 images, § 2G2.2(b)(7) & cmt. 4(B)(ii).  Finally, the guideline includes a cross-reference to the guideline for production of child pornography, U.S.S.G. § 2G2.1, if the resulting offense level is greater than the offense level determined by application of § 2G2.2.  U.S.S.G. § 2G2.2(c).

The probation officer recommended, the parties did not dispute, and I find that Beiermann's base offense level, grouping all three charges to which he has pleaded guilty, is 22, U.S.S.G. § 2G2.2(a)(2); that he should receive a two-level increase for material involving a prepubescent minor or a minor who had not attained the age of 12, § 2G2.2(b)(2); that he should receive a five-level increase for an offense involving distribution for the receipt or the expectation of receipt of a thing of value, but not for pecuniary gain, in this case, the receipt of different images of child pornography, § 2G2.2(b)(3)(B); that he should receive a four-level increase for material that portrays sadistic or masochistic conduct or other depictions of violence, § 2G2.2(b)(4); that he should receive a two-level increase for use of a computer or an interactive computer service to commit the offense, § 2G2.2(b)(6); and that he should receive a five-level increase for an offense involving 600 or more images, § 2G2.2(b)(7)(D). Thus, his adjusted offense level is 40. After a three-level reduction for acceptance of responsibility, his total offense level is 37. The parties also agree that Beiermann has zero criminal history points and, thus, a criminal history category of I. Consequently, his advisory guideline sentencing range is 210 to 262 months, exceeding the statutory mandatory minimum of 5 years and, at the top end, exceeding the statutory maximum of 20 years for a single offense in **Counts 1** and **2** and the statutory maximum of ten years for **Count 3**. *See* 18 U.S.C. § 2252A(b)(1) & (b)(2).

### C. Determination Of Whether To Depart Or Vary

Next, I must consider whether a departure or a variance is appropriate. *Roberson*, 517 F.3d at 993 (second step in the sentencing methodology); *Rivera*, 439 F.3d at 447. The Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (PROTECT Act) of 2003 restricts the court's authority to depart from the sentencing

guidelines in child pornography cases. *See, e.g., United States v. Baird*, 580 F. Supp. 2d 889, 893 (D. Neb. 2008) (Joseph F. Bataillon, Chief Judge). Consequently, I am not authorized to grant a downward departure. The prosecution has withdrawn its motion for an upward departure. *See* docket nos. 34 & 51. Therefore, there will be no departures in this case. Beiermann has moved for a downward variance in this case, however. *See* docket no. 37 (sealed). Therefore, I will consider whether to vary from the advisory guideline sentencing range in this case.

### 1. Arguments of the parties

Beiermann argues that the guideline at issue here should be given less deference, because it is not the result of empirical analysis, and he cites several district court decisions that have reached that conclusion. As to his particular conduct, Beiermann argues that, although he traded images with other individuals he met on line, his "distribution" and "transportation" of child pornography were merely incidental to his possession of such material. Thus, he contends that, in the hierarchy of seriousness of such offenses, his is at the low end.

More specifically, he argues that the five-level increase for distribution not for profit or pecuniary gain, but to receive more images, blurs the distinction (and seriousness) between merely trading incident to possession and selling illicit images for profit. He also argues that the five-level increase for the number of images involved exaggerates the seriousness of his conduct, where there is no evidence that he was producing any images, and his "passive" collection of images does nothing to increase the number of images already available. He also argues that his personal characteristics warrant a downward variance, because he has no prior history of sexual offenses, let alone ones involving children, and no prior offenses such as voyeurism or loitering that might be seen as precursors to more serious sexual offenses; he has no record of prior mental health

problems or alcohol or substance abuse; he has a supportive family and is generally considered helpful to his community; and he has a history of stable employment. He contends that all of these factors bode well for his rehabilitation and that his friends and family will keep him from reoffending, because they are supportive and because they will be aware of any danger signals of relapses. He also contends that he cooperated fully with law enforcement officers and psychosexual evaluators. Beiermann also asserts that he has now come to understand how his conduct contributed to harm to children and, indeed, that he has been affected by the victim impact statements and the negative impact his conduct has had on his family.

Beiermann also contends that even a five-year sentence for a defendant with no prior record of sexual offenses against children, and whose conduct involved only the receipt and possession of child pornography, would signal that the court regards his offenses as very serious crimes. Thus, he contends that no greater sentence is necessary to deter him or others like him. Nor, he contends, is a longer sentence necessary to protect the public, because his psychosexual evaluations indicate good potential for rehabilitation and no risk of recidivism. He also contends that treatment will be available to him while in prison. Finally, he contends that a sentence below the advisory guideline range will ameliorate the disparity of imposing the same sentence on him that others who commit far more serious crimes would also receive.

Thus, at the conclusion of the sentencing hearing on February 23, 2009, Beiermann argued that a downward variance to a sentence of 84 to 90 months would be appropriate after consideration of the § 3553(a) factors.

The prosecution counters that Congress and a sense of justice and reason require serious punishment for a person who knowingly victimizes children and that the applicable

guideline reflects congressional intent. The prosecution also argues that no downward variance is appropriate in this case.

More specifically, the prosecution argues that Beiermann's collection of images and videos contains some of the most vile and damaging images imaginable. The prosecution also argues that the sheer number of victims involved calls for a lengthy sentence. From the 377 images known to depict 54 different victims, the prosecution extrapolates that Beiermann's collection of approximately 2,600 images could correlate to more than 370 different abused children. The prosecution contends that Beiermann's trading in the visual depictions of abuse of children harms those children over and over again, and it creates market pressure for such images, which leads to the further abuse of children. Indeed, the prosecution argues that Beiermann's conduct is a notch above passive reception, because he "jumped into" the transfer of child pornography, and changed screen names and his internet profile to facilitate the flow of child pornography.

The prosecution also argues that Beiermann clearly knew his conduct was wrong, but continued it anyway, despite warnings from his internet service provider. Thus, the prosecution argues that Beiermann is unable to control himself, and even after he was caught, persisted in the belief that the allegations against him were exaggerated and that nobody was hurt by his conduct. Because of Beiermann's "loner" personality and secretiveness, the prosecution questions whether he will avail himself of the support of family and friends. The prosecution also points out that this is not a case in which Beiermann stopped his conduct before he was arrested, or even a case in which he occasionally made attempts to stop his conduct. The prosecution also suggests, with little or no explanation, that a sentence within the guideline range is appropriate to provide adequate deterrence to others; to provide just punishment; to reflect the seriousness of the

offense; to promote respect for the law; and to protect the public from further crimes by the defendant.

At the completion of the sentencing hearing on February 23, 2009, the prosecutor asserted that he could not acknowledge the possibility that a sentence less than the advisory sentencing guideline range could be reasonable in this case, based on consideration of the § 3553(a) factors. When I pressed the prosecutor to consider whether a sentence of 209 months, one month below the bottom of the advisory guideline range, could be reasonable, the prosecutor stated that such a sentence would be unreasonable, and he stuck to his position that a guideline sentence—and apparently only such a sentence—would be reasonable. Nevertheless, he denied that he was applying a presumption that the advisory guideline range was reasonable, because he claimed that his strict adherence to the reasonableness of the advisory guideline range was based on application of the § 3553(a) factors.

### 2. Analysis

#### a. Judicial rejections of the child pornography guideline

Even before *Spears*, numerous district courts had read *Kimbrough* to permit a sentencing court to give little deference to the guideline for child pornography cases on the ground that the guideline did not exemplify the Sentencing Commission's exercise of its characteristic institutional role and empirical analysis, but was the result of congressional mandates, often passed by Congress with little debate or analysis. *See, e.g.,*[4] *United States v. Baird*, 580 F. Supp. 2d 889, 892 (D. Neb. 2008); *United States v. Goldberg*, 2008 WL 4542957, *6 (N.D. Ill. April 30, 2008); *United States v. Shipley*, 560 F. Supp.

---

[4] These cases are cited in chronological order to suggest the increasing recognition of flaws in the child pornography guideline over the last year.

2d 739, 744 (S.D. Iowa 2008); *United States v. Hanson*, 561 F. Supp. 2d 1004, 1009-1011 (E.D. Wis. 2008); *United States v. Ontiveros*, 2008 WL 2937539, *8 (E.D. Wis. July 24, 2008); *United States v. Grinbergs*, 2008 WL 4191145, *5-*8 (D. Neb. Sept. 8, 2008); *United States v. Stults*, 2008 WL 4277676, *4-*7 (D. Neb. Sept. 12, 2008); *United States v. Noxon*, 2008 WL 4758583, *2 (D. Kan. Oct. 28, 2008); *United States v. Johnson*, ___ F. Supp. 2d ___, 2008 WL 5115047, *5-*6 (S.D. Iowa Dec. 4, 2008); *United States v. Stern*, ___ F. Supp. 2d ___, 2008 WL 5273714, *13 (N.D. Ohio Dec. 19, 2008); *United States v. Gellatly*, 2009 WL 35166, *5-*7 (D. Neb. Jan. 5, 2009); *see generally* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (hereinafter, Stabenow, *Deconstructing the Myth*) (July 3, 2008) (available at mow.fd.org/3%20July%202008%20Edit.pdf) (detailing the various congressionally mandated revisions to the child pornography Sentencing Guidelines and their effect on "ordinary" defendants); *but see United States v. Valenzuela*, 2008 WL 5422707, *4 (3d Cir. Dec. 31, 2008) (concluding that the question of whether the *Kimbrough* reasoning should apply to the child pornography guidelines was "not really at issue," where the sentencing court did not explicitly disagree with those guidelines and, indeed, sentenced the defendant to a within-guidelines sentence, and noting, "As it is not an abuse of discretion for a district court judge to follow the crack/cocaine ratio outlined in the Guidelines, even if this Court were to find that the Guidelines and cross-reference at issue were not based on empirical research and should be treated in the same way as the crack/cocaine ratio Guidelines under *Kimbrough*, it was not an abuse of discretion to sentence Castro-Valenzuela to a within-Guidelines sentence."). I must consider whether to join these courts in finding that U.S.S.G. § 2G2.2 is entitled to little deference.

### b. *The degree of deference due the guideline*

Contrary to the findings of numerous courts, the prosecution contends that U.S.S.G. § 2G2.2 *is* the product of both the Commission's empirical analysis and congressional directives.[5] Indeed, the prosecution argues that several courts have "uncritically" embraced the faulty criticisms of the amendment of this guideline presented in Stabenow's article. In support of this argument, however, the prosecution identifies not one whit of empirical analysis by the Commission supporting the repeated amendments to the child pornography guidelines at Congress's behest since 1991. Rather, the principal or only reason given by the Commission itself for each of the amendments identified by the prosecution as reflecting the Commission's exercise of its institutional expertise is that the amendment was undertaken exclusively or primarily at the behest of Congress. *See* U.S.S.G. Manual, App. C, amends. 31, 325, 372, 435, 436, 537, 592, 649, and 664. Thus, it appears that, in the prosecution's view, the Commission's institutional role is to do what Congress tells it to do to the child pornography guidelines.

The prosecution also staunchly asserts that no variance from the advisory guideline sentencing range of 210 to 262 months is appropriate in this case—not even by one month down to 209 months—based on the prosecution's consideration of the § 3553(a) factors. The prosecution's objection to a downward variance in this case is not surprising. Since *United States v. Booker*, 543 U.S. 220 (2005), was decided to the end of 2008, there have been 1526 felony sentencings in this district.[6] A high percentage of those cases involved

---

[5]This contention appears in the "consolidated" brief filed by the prosecution in both this case and in *United States v. Matthew Orval Kashas*, Case No. CR 07-4075-MWB, concerning the issues raised in Stabenow, *Deconstructing the Myth*.

[6]The total of 1526 does not include the 304 felony sentencings on immigration

(continued…)

a request for a downward variance, yet the United States Attorney's Office for the Northern District of Iowa has agreed to only two such variances. Consistent with such entrenched opposition to any downward variances, whatever the circumstances, the combined brief of the United States Attorney's Office on variance issues in this case and the *Kashas* case ends with the statement that "the government respectfully requests that the court sentence the defendants within the Guideline range." Some form of this incantation, either orally or in writing, has existed in every sentencing in our district since *Booker*, with only the two exceptions I noted above.

If I were to follow the request of the United States Attorney's Office to give a guideline sentence over 99.99% of the time, I believe I would be giving the guidelines the exact presumption of reasonableness that the Supreme Court and all Circuits now mandate that a sentencing judge cannot give the Guidelines. *See, e.g., Nelson*, 129 S. Ct. at 892 (reiterating that "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," and that "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable" (emphasis in the original)); *Henson*, 550 F.3d at 740 (the sentencing court cannot presume that a guidelines sentence is reasonable, although the appellate court may do so). While I am not saying that it is impermissible for this United States Attorney's Office to argue for a guideline sentence in virtually every case, because the appellate decisions are a restraint on district court judges giving guidelines sentences a presumption of reasonableness, not a restriction on prosecutors, it is unfortunate, in my view, that prosecutors do not impose upon themselves a duty not to presume that a guideline sentence

---

[6](...continued)
offenses in the Waterloo Division arising from the Immigration and Customs Enforcement (ICE) raid on a kosher meat-packing plant in Postville, Iowa.

is reasonable. It continues to perplex me that, with only two exceptions, this United States Attorney's Office has never met a downward variance that it has thought was appropriate in over 1526 sentencings.

I posit then, that if this United States Attorney's Office took its mission to do justice in sentencings as seriously as it takes its desire to obtain convictions, its application of the § 3553(a) factors to every defendant with a guideline range above a mandatory minimum could not result in so few cases in which a downward variance was deemed acceptable. *See, e.g.*, United States Department of Justice, "Mission Statement" (the mission of the United States Department of Justice is, *inter alia*, "to seek just punishment for those guilty of unlawful behavior" and "to ensure the fair and impartial administration of justice for all Americans") (published at www.usdoj.gov/02organizations/). It seems statistically, practically, and legally impossible that the number of downward variances that this United States Attorney's Office finds acceptable could remain so low, if justice in sentencing, not just convictions, were the goal. Moreover, it appears to me that the Assistant United States Attorney in this case was clearly applying a *de facto* presumption of reasonableness of the advisory sentencing guideline range, notwithstanding his protests that his unwavering adherence to the guideline range was based on his application of the § 3553(a) factors, not a presumption that the guideline range was reasonable. It is, at the very least, uncanny how often the consideration of the § 3553(a) factors leads the attorneys in this United States Attorney's Office to the conclusion that the advisory sentencing guideline range is the only reasonable sentencing range. Such a truncated view of "reasonableness" seems inherently unreasonable to me.

Consistent with its view that virtually no defendant is ever entitled to a downward variance, the United States Attorney's Office for the Northern District of Iowa cites *United States v. Fiorella*, No. CR 07-60-LRR (N.D. Iowa 19) (docket no. 148), a sentencing

decision from this district by Chief Judge Linda R. Reade, in support of its contention that defendant Beiermann is not entitled to a downward variance and that the applicable guideline is worthy of deference. In *Fiorella*, Chief Judge Reade sentenced a defendant to 360 months of imprisonment, the top of that defendant's advisory sentencing guideline range, for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). In her well-reasoned and thorough decision, Chief Judge Reade did not embrace the criticisms of U.S.S.G. § 2G2.2 presented in *Stern*, *Baird*, and *Shipley*, which I have embraced in large part in this decision, because she stated that, in her view, *Stern*, *Baird*, and *Shipley* were wrongly decided. Chief Judge Reade explained that she believes that those cases understated the seriousness of the offenses in question, failed to promote respect for the law, and failed to provide just punishment, and she also found that they were distinguishable, because a cross-reference to U.S.S.G. § 2G2.1 was appropriate in her case, but not in those cases. Chief Judge Reade also found that the defendant before her engaged in a pattern of activity involving sexual abuse and exploitation of a minor, by sexually abusing and exploiting children on at least two occasions, including taking nude, pornographic photographs of her own daughter; she found no acceptance of responsibility; she found that the defendant had obstructed justice; and she ultimately concluded that the defendant was a dangerous sexual predator of children, who had engaged in horrific and reprehensible conduct, and who also posed a high risk of reoffending.

Despite my disagreement with Chief Judge Reade as to whether *Stern*, *Baird*, and *Shipley* were incorrectly decided, her decision in *Fiorella* is well-reasoned (because I believe that reasonable minds and reasonable jurists can disagree with *Stern*, *Baird*, and *Shipley*). Nevertheless, the circumstances of the defendant in *Fiorella* are plainly distinguishable from defendant Beiermann's circumstances on a plethora of grounds—indeed, the conduct of the defendant in *Fiorella* was, by any standard, far more

egregious than any conduct by defendant Beiermann, so that I cannot say that, if presented with the record before Chief Judge Reade, I would have reached a different conclusion about the applicable sentence. That said, because that case involved completely distinguishable circumstances, its rationale is unavailing to the United States Attorney's Office in support of its opposition to a downward variance here and, moreover, because that decision ultimately involved application of the cross-reference to U.S.S.G. § 2G2.1, not a sentence under U.S.S.G. § 2G2.2, it is distinguishable as to the applicable guideline.

Thus, notwithstanding the prosecution's arguments, I join my brethren who find that the child pornography guideline, U.S.S.G. § 2G2.2, which is the result of congressional mandates, is entitled to considerably less deference than other guidelines that *are* based on the Commission's exercise of its institutional expertise and empirical analysis. Perhaps in somewhat of a rush to appease the public's and politicians' noted and continued zeal for harsher sentences in child pornography cases, many courts have claimed that harsher sentences in child pornography cases will somehow reduce both the demand for and availability of child pornography on the Internet. I wish it were that simple.

Experience in other criminal cases, like cases involving crack cocaine and methamphetamine, surely does not support the hope that harsh sentences will end illegal activity. Indeed, the persistent racheting up of sentences for drug trafficking has done nothing to slow the tide of criminal activity. If harsh sentences actually worked, this country—or at least the federal government—would have won the "war on drugs" years ago. No one I know is even suggesting that we are holding our own in the war on drugs, let alone winning. This is so, even though state and federal courts have been populating our nation's prisons with drug defendants in massive, record numbers for over twenty-five years. The U.S. Department of Justice's own statistics prove this point: In 1980 there were 19,000 drug offenders in state correctional facilities, but in 2005 that number had

grown to 253,300. *See* www.ojp.usdoj.gov/bjs/glance/tables/corrtyptab.htm. The number of federal prisoners has grown from 21,539 in 1979 to 143,664 in 2004. The Sentencing Project, *The Expanding Federal Prison Population* (December 2006). During the same period the percentage of prisoners in federal prisons who are drug offenders has increased from 25% to 55%. *Id.* As of January 2009, the Bureau of Prison's prison population has mushroomed to 201,456, the majority of whom (52.5%) are incarcerated for drug offenses. *See* www.bop.gov/news/quick.jsp (Quick Facts about The Bureau of Prisons, last updated January 24, 2009).

While the public's outcry for harsher sentences in child pornography cases is certainly understandable, there is not a single sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet. From the rapid growth of these cases that my colleagues around the country and I are seeing, we cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the Internet. This does not mean that Mr. Beiermann should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of.

### c. *Categorical rejection of the guideline*

Indeed, in light of *Spears*, I find that I may go one step further than simply concluding that the child pornography guideline, U.S.S.G. § 2G2.2, is entitled to considerably less deference than other guidelines, in individual cases, because it is the result of congressional mandates, rather than the Commission's exercise of its institutional expertise and empirical analysis. I find that U.S.S.G. § 2G2.2 should be rejected on

categorical, policy grounds, even in a "mine-run" case, and not simply based on an individualized determination that it yields an excessive sentence in a particular case. *Spears*, 2009 WL 129044 at *2. Again, while *Spears* only addressed the crack-to-powder ratio in the Sentencing Guidelines, the powerful implication of *Spears* is that, in other "mine-run" situations, the sentencing court may also reject guidelines provisions on categorical, policy grounds—particularly where, as here, those guidelines provisions "'do not exemplify the Commission's exercise of its characteristic institutional role,'" *id.* at *3 (quoting *Kimbrough*, 128 S. Ct. at 563)—and may, consequently, adopt some other well-reasoned basis for sentencing.

My first policy objection to U.S.S.G. § 2G2.2 is that the guideline does not reflect empirical analysis, but congressional mandates that interfere with and undermine the work of the Sentencing Commission. As my colleague in the Southern District of Iowa, Chief Judge Pratt, so cogently explained,

> As to any argument that the guideline reflects Congressional intent to punish child sex offenses harshly, a guideline is not a statute. The statute here provides a broad range of punishment for this crime, and if Congress does not want the courts to try and sentence individual defendants throughout that range based on the facts and circumstances of each case, then Congress should amend the statute, rather than manipulate an advisory guideline and blunt the effectiveness and reliability of the work of the Sentencing Commission.

*Shipley*, 560 F. Supp. 2d at 744. Because of congressional manipulation, this advisory guideline "is not a reliable indicator of the Sentencing Commission's perspective on a fair sentence." *Id.*; *see also Baird*, 580 F. Supp. 2d at 892 (noting that the child pornography guideline is not based on an empirical approach, but is instead "keyed to or guided by statutory directives," so that the court "is not presented with the 'ordinary case,' in which

'the Commission's recommendation of a sentencing range will "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."'" (quoting *Kimbrough*, 128 S. Ct. at 574, in turn quoting *Rita*, 127 S. Ct. at 594 n.2)). As such, I find that this guideline is not only entitled to little deference, but that I am entitled to reject it entirely. *See Spears*, 2009 WL 129044 at *2 (a guideline may be rejected on categorical, policy grounds, even in a "mine-run" case, and not simply based on an individualized determination that it yields an excessive sentence in a particular case).

My second policy objection is that the guideline impermissibly and illogically skews sentences for even "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability. *See, e.g.,* Stabenow, *Deconstructing the Myth*, at 23 ("The flaw with U.S.S.G. § 2G2.2 today is that the average defendant charts at the statutory maximum, regardless of Acceptance of Responsibility and Criminal History."). This is so, largely because the level enhancements, some quite extreme, are based on circumstances that appear in nearly every child pornography case: using the internet, amassing numerous images (made particularly easy by the internet); presence of video clips counted as 75 images each; presence of images of prepubescent minors and violence (broadly defined to include a prepubescent minor engaged in a sex act); and some "distributing" in return for other images. *Id.* at 23-24. This guideline, thus, blurs logical differences between least and worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment. *See* 18 U.S.C. § 3553(a). As Judge Lynn Adelman of the Eastern District of Wisconsin has observed, "[T]he guideline for this offense, which contains numerous and significant enhancements for factors that are present in many if not most cases, diverges significantly from the Sentencing Commission's typical, empirical approach, and produced a sentence greater than necessary to provide just

punishment in this case," and "the guideline imposed on defendant the same degree of enhancement as may be imposed on a commercial peddler," and, thus, fails to distinguish between the least and worst offenders. *Hanson*, 561 F. Supp. 2d at 1008. Judge Adelman also observed, "These amendments [between 1994 and 2007 pursuant to congressional mandates] destroyed the careful distinctions the Commission had drawn between true peddlers of child pornography and more simple possessors or transporters." *Id.* at 1009. The sentencing court must consider the need to avoid *unwarranted similarities* among defendants who are *not* similarly situated, as well as *unwarranted disparities* among defendants who *are* similarly situated. *See, e.g., Gall*, 128 S. Ct. at 600 ("[I]t is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted similarities among other co-conspirators who were not similarly situated," and there was no procedural error in doing so). This § 2G2.2 does not do.

The Commission itself noted these problems:

> To its credit, and as in the crack cocaine context, the Commission sought to persuade Congress not [to] make such changes, but to no avail. [Stabenow, *Deconstructing the Myth*] at 3-7 (quoting letter from Chair of the Commission). Specifically, the Commission has noted that the enhancement for use of a computer does not make much sense because online pornography comes from the same pool of images found in specialty magazines or adult bookstores. Further, to the extent that use of a computer may aggravate an offense, it does not do so in every case. For example, someone who e-mails images to another (like the instant defendant) is not as culpable as someone who sets up a website to distribute child pornography to a large number of subscribers. If the defendant did not use the computer to widely disseminate the images, use them to entice a child, or show them to a child,

> the purpose for the enhancement is not served. Id. at 14-15.
> Yet it applies in virtually all cases.

*Hanson*, 561 F. Supp. 2d at 1009-1010; *see also Ontiveros*, 2008 WL 2937539 at *8 (noting that "now less than 5% of the defendants affected by the changes [to § 2G2.2 mandated by Congress] fall within the classes of mass producers, repeat abusers, and mass distributers that Congress intended to target for the lengthiest sentences." (citing Stabenow, *Deconstructing the Myth*, at 27)).

In short, the harsh advisory guideline sentences pursuant to U.S.S.G. § 2G2.2 for child pornographers, whatever their criminal conduct, criminal histories, or personal characteristics, reflect a "put them down the oubliette" mentality that has nothing to do with imposing a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *See* 18 U.S.C. § 3553(a). These flaws mean that this guideline is not only entitled to little deference, but that I am entitled to reject it entirely. *See Spears*, 2009 WL 129044 at *2 (a guideline may be rejected on categorical, policy grounds, even in a "mine-run" case, and not simply based on an individualized determination that it yields an excessive sentence in a particular case).

Therefore, I find that a guideline sentence in this case is inappropriate on categorical, policy grounds.

### d.     *The reasoned alternative basis for sentencing*

The categorical rejection of the applicable guideline on policy grounds means that I also have the authority to adopt some other well-reasoned basis for sentencing in a "mine-run" child pornography case. *Id.* at *3 (where the sentencing court disagreed with the 100:1 ratio for crack cocaine cases, the sentencing court also necessarily had the authority to adopt some other ratio to govern a "mine-run case"). Here, I cannot simply conclude that the guideline identifies the correct factors for determination of the

sentence—such as crack cocaine rather than powder cocaine—but gives them too much weight—such as the 100:1 crack-to-powder ratio—and adjust the weight accordingly—such as by adopting a 20:1 ratio, instead, based on well-reasoned or expert opinions. *Cf. id.* This is so, because as I noted, above, a significant problem with this guideline is that many of the factors that it identifies actually do nothing at all to distinguish the least from the worst offenders, because those factors are present in nearly every case: using the internet, amassing numerous images (made particularly easy by the internet); presence of video clips counted as 75 images each; presence of images of prepubescent minors and violence (broadly defined to include a prepubescent minor engaged in a sex act); and some "distributing" in return for other images. Stabenow, *Deconstructing the Myth*, at 23-24; *see also Hanson*, 561 F. Supp. 2d at 1008 ("[T]he guideline for this offense, which contains numerous and significant enhancements for factors that are present in many if not most cases, diverges significantly from the Sentencing Commission's typical, empirical approach, and produced a sentence greater than necessary to provide just punishment in this case"). As one commentator points out, these level enhancements can have the effect of imposing a higher sentence on a defendant for trading child pornography than would be imposed on a defendant who actually coerced a young child into sex or who repeatedly raped a prepubescent child. *Id.* at 26. Similarly, while drug quantity is often a reliable indicator of intent to distribute drugs, number of images is no such reliable indicator of the culpability of the conduct of a defendant convicted of a child pornography offense. *See Grinbergs*, 2008 WL 4191145 at *10 ("[B]ecause of the increased ability to easily and inexpensively capture and store images with computers, the number of images does not reliably provide the distinction between large-scale and small-scale child pornography purveyors that Congress and the Sentencing Commission envisioned when promulgating

the enhancement."); *but see Hanson*, 561 F. Supp. 2d at 1012 (finding number and type of images to be aggravating factors warranting a sentence above the mandatory minimum).

Moreover, even where the factors identified are relevant to distinguish among defendants, I find that some of them are given too much weight under § 2G2.2, that is, they impose excessive level increases. Factors that I find are relevant but excessively weighted are the "distribution" factors in § 2G2.2(b)(3); the sadistic, masochistic, or violent images factor in § 2G2.2(b)(4); and the pattern of activity factor in § 2G2.2(b)(5). While the conduct identified in these factors does properly distinguish among least and worst defendants, the weight given to these factors in the guideline then largely eliminates the distinctions, and the cumulative effect of such excessive weight for individual factors further blurs distinctions and skews upward all defendants' sentencing ranges.

On the other hand, I do find it appropriate for the guideline to establish base offense levels that are informed by the statutory mandatory minimum sentences for the crimes involved. *See* U.S.S.G. § 2G2.2(a); *see also* Stabenow, *Deconstructing the Myth*, at 21-22 (noting that the Commission had increased the base offense levels in 2004 in response to the mandatory minimum sentences established by the PROTECT Act, such that, when combined with several specific offense characteristics which are expected to apply in almost every case, identified as use of a computer, material involving children under 12, and the number of images, the mandatory minimum sentence would be reached); *but see Hanson*, 561 F. Supp. 2d at 1010 (observing that amendment of the base offense level to keep pace with statutory mandatory minimums "had nothing to do with the Commission's statutory mission of satisfying the purposes of sentencing" (citing Stabenow, *Deconstructing the Myth*, at 18-19)). I also find it appropriate to *reduce* the defendant's offense level, if the defendant is convicted of an offense other than mere possession, but the defendant's conduct was limited to the receipt or solicitation of child pornography with

no intent to traffic in or distribute such material, *see* U.S.S.G. § 2G2.2(b)(1), as such a reduction does properly distinguish between least and worst offenders.

The result is that a reasoned alternative to the flawed guideline is for the sentencing judge to begin with the base offense level, which reflects the mandatory minimum statutory sentence, U.S.S.G. § 2G2.2(a), and then to consider appropriately identified factors, such as those in § 2G2.2(b)(1), (3), (4), and (5), but to give those factors more appropriate weight in the determination of a particular defendant's sentence. Such "cherry picking" and reweighing of factors from the guideline is appropriate—indeed, totally consistent with the exercise of my discretion to apply the 18 U.S.C. § 3553(a) factors—because it reflects the extent of my categorical and policy disagreement with the guideline.

In light of my categorical rejection of U.S.S.G. § 2G2.2, I will vary from the guideline sentence. Even were I limited to an individualized determination of whether § 2G2.2 yields an excessive sentence in this particular case, however, I would find that the advisory guideline sentence resulting from application of § 2G2.2 in this case, 210 to 262 months imprisonment, is greater than necessary to accomplish the goals of sentencing. *See* 18 U.S.C. § 3553(a).[7]  Therefore, on the basis of such an individualized

---

[7]To the extent that the question is whether the recommended sentencing range under § 2G2.2 is greater than necessary to accomplish the goals of sentencing as to a particular defendant, I agree with the prosecution that the question is not whether the child pornography guideline is analogous to the crack cocaine guideline, but whether § 3553(a) considerations justify a variance from the advisory guideline sentence. I clarify, however, that, in my view, § 3553(a) considerations justify a variance from a guideline sentence under § 2G2.2 in a child pornography case *on categorical grounds*, because § 2G2.2 is so flawed, in some of the same ways that the 100:1 ratio in the crack-cocaine-to-powder-cocaine guideline is flawed, that the sentencing range that it recommends does not "'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 128 S. Ct. at 574 (quoting *Rita*, 127 S. Ct. at 594 n.2).

determination, I would also vary from the guideline sentence, just as I would vary from the guideline sentence on the basis of my categorical rejection of the guideline.

### D.  Consideration Of § 3553(a) Factors

The final step in the determination of a defendant's sentence is to apply the factors in 18 U.S.C. § 3553(a).  *Roberson*, 517 F.3d at 993; *Rivera*, 439 F.3d at 447.  After balancing the § 3553(a) factors, I find that a guideline sentence of 210 to 262 months for this defendant to be well in excess of any sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing.  18 U.S.C. § 3553(a).  Rather, I find that a sentence much closer to, but above, the statutory mandatory minimum of 60 months, and well below the statutory maximum of 240 months, is appropriate.

The § 3553(a) factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the need for the sentence imposed," § 3553(a)(2), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training" or other care or treatment, § 3553(a)(2)(D); "the kinds of sentences available," § 3553(a)(3); "the kinds of sentence and the sentencing range established" for similar offenses, § 3553(a)(4); "any pertinent policy statement," § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6); and "the need to provide restitution to any victims of the offense," § 3553(a)(7).  In considering the § 3553(a) factors in the last step of the sentencing methodology, "[a] district court is not required to recite each of the

sentencing factors under 18 U.S.C. § 3553(a), as long as the record makes clear that they were considered." *United States v. Powills*, 537 F.3d 947, 950 (8th Cir. 2008) (citing *United States v. Hernandez,* 518 F.3d 613, 616 (8th Cir. 2008), and *Rita v. United States,* ___ U.S. ___, 127 S. Ct. 2456, 2468-69 (2007)). Nevertheless, I will expressly consider each of the § 3553(a) factors in turn in this case.

### 1. *The nature and circumstances of the offense*

The first § 3553(a) factor requires the court to consider "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). I recounted above, in some detail, the nature and circumstances of defendant Beiermann's offenses. As I noted above, factors identified in U.S.S.G. § 2G2.2 that I find are relevant to distinguish least from worst offenders (but excessively weighted in the guideline) are the "distribution" factors in § 2G2.2(b)(3); the sadistic, masochistic, or violent images factor in § 2G2.2(b)(4); and the pattern of activity factor in § 2G2.2(b)(5). Here, the probation officer recommended, the parties did not dispute, and I found that a guideline enhancement was appropriate for an offense involving distribution for the receipt or the expectation of receipt of a thing of value, but not for pecuniary gain, in this case, the receipt of different images of child pornography, § 2G2.2(b)(3)(B), and that an enhancement was appropriate for an offense involving material that portrays sadistic or masochistic conduct or other depictions of violence, § 2G2.2(b)(4), but that no enhancement was appropriate for a pattern of activity pursuant to § 2G2.2(b)(5). I find that an enhancement of defendant Beiermann's non-guideline sentence above the mandatory minimum is also appropriate based on these considerations.

I reject defendant Beiermann's suggestion that he was merely a "passive" collector of images,[8] as well as his contention that his "distribution" and "transportation" of child pornography were merely incidental to his possession of such material. Beiermann repeatedly traded images, spending 3 or 4 days a week for 3 or 4 hours at a time, encouraged others to trade images using an internet service specifically geared to share images, and went so far as to modify his internet profile to suggest that he was a lesbian female, because he found that by doing so, people were more willing to trade pornography, specifically, child pornography, with him. Such conduct warrants a sentence above the mandatory minimum. *See, e.g., Shipley*, 560 F. Supp. 2d at 745 (finding that the defendant's trading of images almost daily, and "thereby actively and consistently perpetuating the market for this material, warrants a sentence above the mandatory minimum"); *and compare Grinbergs*, 2008 WL 4191145 at *9 (finding less culpable obtaining images through an e-mail account than obtaining them through a peer-to-peer file-sharing network).

---

[8]Indeed, I reject defendant Beiermann's contention that mere "passive" collection does nothing to increase the number of images already available, because collection of child pornography does fuel the market for the such images, and thus, at least indirectly, encourages the abuse of children, even if the mere possessor or collector is at the low end of the culpability spectrum. *See, e.g., Baird*, 580 F. Supp. 2d at 893 (stating, "Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children," but recognizing that "[p]ossession is the least serious of the crimes on the continuum of conduct—from possession to distribution to production to predatory abuse—that exploits children"); *Goldberg*, 2008 WL 4542957 at *5 (downloading child pornography from the internet "does sustain a market for child pornography," but noting that "the market is unfortunately there regardless of what may happen to [a particular defendant]"); *Shipley*, 560 F. Supp. 2d at 743 ("[I]ndividuals trading such images create the market for the images that resulted in the exploitation and victimization of [children].") & 745 (trading child pornography "perpetuat[es] the market for this material").

I am also troubled by the sadistic and masochistic images in Beiermann's collection. Although they form a relatively small portion of that extensive collection, and Beiermann denies any interest in such images, they are vile and damaging, although the prosecution's description of them as among the most vile and damaging images imaginable is an exaggeration. Beiermann's denial of any interest in such images is not entirely credible, because he did not purge his collection of such images and the fact that he kept them suggests that he valued them either for personal reasons or because he considered them valuable as trading material. Either reason for keeping them increases his culpability above a mere possessor of child pornography generally and warrants some enhancement of his sentence above the mandatory minimum. *Compare Hanson*, 561 F. Supp. 2d at 1009 (finding that the defendant denied seeking out such material and that nothing in the record controverted his denial, and observing, "To the extent that harsh punishment is necessary in these types of cases to reduce the demand for material that results in harm to children, a defendant who does not seek out the worst of the material should not receive the same sentence as someone who does.").

Thus, I find that the nature and circumstances of the defendant's offenses warrant some enhancement of his sentence above the applicable mandatory minimum.

### 2. The history and characteristics of the defendant

The first § 3553(a) factor also requires the court to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). I also described above, in some detail, the history and characteristics of the defendant. In this regard, I find Beiermann's lack of any significant criminal history—indeed, he scored no criminal history points for his sole prior conviction, which was for criminal mischief as an adolescent—to be substantially mitigating. Not only does he have no significant criminal history, there is no indication in the record of abuse of his own or other children; no prior history of

sexual offenses, let alone ones involving children; and no prior offenses such as voyeurism or loitering that might be seen as precursors to more serious sexual offenses. *See, e.g.,* Stabenow, *Deconstructing the Myth*, at 23 ("The flaw with U.S.S.G. § 2G2.2 today is that the average defendant charts at the statutory maximum, regardless of Acceptance of Responsibility and Criminal History."); *see also Baird*, 580 F. Supp. 2d at 893 (noting that a sentence below the advisory guideline range was appropriate, in part, because the defendant had no criminal history points and no previous contacts with the criminal justice system); *Grinbergs*, 2008 WL 4191145 at *9 (also noting that the defendant's lack of criminal history and low risk of reoffending, and determination by experts that he was not a pedophile, sexual predator, or child abuser warranted a sentence below the advisory guideline range).

I was also duly impressed by the show of support from defendant Beiermann's friends and family members, almost two dozen of whom appeared at his sentencing hearing on November 19, 2008, almost all of whom had traveled for nearly two hours from Fremont, Nebraska, to attend that hearing, and by the appearance of some nineteen of defendant Beiermann's supporters at the completion of his sentencing hearing on February 23, 2009. I was also duly impressed by the continued support and affection of his spouse and children. Such a show of support suggests that this defendant is redeemable and will have significantly greater support than usual in his efforts at rehabilitation. Beiermann is also now, albeit perhaps belatedly, realizing the damage that his offenses can do to children and have done to his own family. Furthermore, the psychosexual evaluators agree that Beiermann is likely to respond positively to treatment. *See Baird*, 580 F. Supp. 2d at 894 (noting, as part of its basis for a sentence below the advisory guideline range, that mental health professionals agreed that the defendant presented a low risk of reoffending, was not a pedophile, and was unlikely to engage in any other crime). To sentence such

a defendant anywhere in his advisory guideline sentencing range, which is very near or over the statutory maximum, would be disproportionately harsh compared to his criminal conduct and history. Rather, the defendant's history and characteristics suggest that a sentence near the mandatory minimum is likely to be sufficient.

### 3.    *The need for the sentence imposed*

The second § 3553(a) factor is "the need for the sentence imposed," § 3553(a)(2), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training" or other care or treatment, § 3553(a)(2)(D). Even those who find that the Sentencing Guideline for child pornography offenses is flawed agree that "child pornography is a pernicious evil." *See, e.g.,* Stabenow, *Deconstructing The Myth*, at 31. I do not for a moment suggest that possessing, shipping, transporting, or receiving child pornography is anything but a very serious offense. *Accord Baird*, 580 F. Supp. 2d at 893; *Hanson*, 561 F. Supp. 2d at 1007 ("As everyone (including defendant) acknowledged, the crime [transporting and possessing child pornography in violation of 18 U.S.C. § 2252(a)(1) and (a)(5)(B)] was very serious. Young children are harmed to create this material, which is used to feed a market composed of those with the predilections defendant had. . . . Congress has signaled its view of the seriousness of the crime by creating a statutory range of 5-20 years."). Thus, some substantial term of imprisonment is required in this case. *See, e.g., Stern*, 2008 WL 5273714 at *10 ("Child pornography must be universally condemned, and even a defendant with highly compelling personal characteristics should not be fully excused from such a heinous crime."). However, even the utmost revulsion for child pornography

offenses is not an appropriate basis for imposing sentences that are routinely disproportionate in that they fail to distinguish among the least and worst offenders. *See, e.g., Stern*, 2008 WL 5273714 at *9 ("Respect for the law is promoted by punishments that are *fair*, however, not those that simply punish for punishment's sake. There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will increase if a defendant who deserves a harsh punishment receives a slap on the wrist." (Emphasis in the original; internal citations omitted)). On the other hand, I believe that defendants who deserve harsh punishment should not receive a slap on the wrist, so, for over fourteen years, I have consistently sentenced violent offenders more harshly than the United States Attorney's Office in this district has recommended to promote proper respect for the law by the most violent defendants. *See, e.g., United States v. Flores*, 223 F. Supp. 2d 1016 (N.D. Iowa 2002) (after notice to the parties, *sua sponte* departing horizontally from criminal history category IV to criminal history category VI and upward six levels for an eighteen-year-old defendant convicted of possessing with intent to deliver LSD, based on his incorrigible criminal conduct, including a long history of assaultive behavior, and his dangerousness, propensity for violence, extensive criminal history, and proclivity for recidivism).

As to adequate deterrence, *see* 18 U.S.C. § 3553(a)(2)(B), my learned colleague from the Southern District of Iowa, Chief Judge Pratt, wisely considered both "specific deterrence" of the particular defendant and "general deterrence" of other offenders who might pay any attention to any sentence imposed for a child pornography offense. *See Shipley*, 561 F. Supp. 2d at 745. As to specific deterrence, he considered the defendant's lack of criminal history and the shame that the defendant felt as mitigating the necessary term of imprisonment, while observing that the sentence imposed should be adequate to

deter others, if they were capable of being deterred. *Id.* Here, I find that Beiermann's lack of significant criminal history and his shame, indicated in his brief, but sincere allocution,[9] also mitigate the term of imprisonment necessary to deter him from future conduct. Yet, the term of imprisonment should be sufficiently substantial to deter others who are or might become engaged in such conduct, if such persons are capable of being deterred. *Id.* Thus, a term of imprisonment above the statutory mandatory minimum, as already suggested by other § 3553(a) factors, is also appropriate on this ground.

As to protection of the public from further crimes of this defendant, *see* 18 U.S.C. § 3553(a)(2)(C), another colleague, Judge William C. Griesbach of the Eastern District of Wisconsin, wisely observed, "A court should exercise caution to avoid imposing a sentence for a crime some fear a defendant could commit in the future, instead of for the crime he actually committed and for which he is before the court." *Ontiveros*, 2008 WL 2937539 at *5. Similarly, Judge Adelmann of the same district has pointed out,

> The Commission itself sought to increase penalties for those offenders who also had a history of sexually exploiting or abusing minors, and posed a greater risk of recidivism, certainly a valid concern. However, Stabenow notes that it did so based on a study of offenders in 1994 and 1995, while most offenders prosecuted in federal court today . . . have no such histories. The typical child pornography defendant today has no prior felonies of any kind, let alone prior abuse of children, and is not involved in production. [Stabenow, *Deconstructing the Myth*], at 13.

---

[9]Specifically, defendant Beiermann stated that he hoped that, after completion of his term of imprisonment and treatment during imprisonment, he would be able to look his friends and family in the eyes without the shame he now feels. The court also hopes that will be the case.

*Hanson*, 561 F. Supp. 2d at 1010. Again, mere revulsion for child pornography offenses is not a reliable indicator of the need to protect the public from defendants who commit such offenses. Rather, the defendant's likelihood of recidivism should be carefully considered, in child pornography cases, as well as in any other cases.

Where the particular defendant convicted of a child pornography offense has a low potential for recidivism, particularly where that low potential is well informed by expert evaluations and the defendant's post-arrest conduct, the defendant has no significant prior criminal history, and where the defendant appears genuinely remorseful about his crimes and aware of the harm that they cause, several courts have found little need to impose a full guideline sentence to protect the public. *See, e.g., Baird*, 580 F. Supp. 2d at 895 ("In light of his demonstrated remorse, which the court credits as sincere, there is little need to protect the public from any future crimes. Baird has a low potential for recidivism and appears to appreciate the seriousness of his offense. In this connection, the court stresses the importance of opinions of the medical professionals who have examined Baird and have determined that he is not likely to reoffend and is not a predator."); *Hanson*, 561 F. Supp. 2d at 1011 (the guideline range was greater than necessary, where an expert indicated that the defendant "was invested in treatment and presented a low risk of re-offending"); *Ontiveros*, 2008 WL 2937539 at *4-*5 (the defendant's remorse and cooperation with investigators boded well for rehabilitation and his lack of criminal history indicated that he did not pose a significant threat of reoffending or otherwise endangering the public, and although a psychological evaluation suggested a moderate pre-treatment risk for future online pornography use, that evaluation suggested a low risk of contact behavior); *Grinbergs*, 2008 WL 4191145 at *9 (the court credited testimony of experts who had treated the defendant, which indicated that the defendant had made excellent progress in rehabilitation and had little likelihood of recidivism); *Johnson*, ___ F. Supp. 2d ___, 2008

WL 5115047 at *6 ("In light of Defendant's interaction with his family and with society during the three-year period and the absence of any criminal history at all, the Court believes that Defendant is not likely to harm the public through future crimes."); *Stern*, ___ F. Supp. 2d ___, 2008 WL 5273714 at *10 (finding it "critical" to the determination that the defendant did not need to be incapacitated to protect the public that all psychiatrists and psychologists to examine him found him to pose an exceedingly low risk of recidivism); *but see Noxon*, 2008 WL 478583 at *3 (although the court was fairly confident that the defendant would not reoffend, in considering the protection of the public factor, the court also gave consideration to the defendant's chat room conversations and other relevant conduct). Moreover, an extended period of supervision after release from imprisonment may also serve to protect the public adequately from such defendants. *See, e.g., Shipley*, 560 F. Supp. 2d at 745; *but see Stern*, ___ F. Supp. 2d ___, 2008 WL 5273714 at *12 (although the court believed that future supervision would reduce the need for a prison sentence, the court still believed that publication that those who possess child pornography will be imprisoned would help reduce the demand for such material in a way that a less extreme sentence could not). Here, like other courts, I note Beiermann's lack of any significant criminal history and the psychosexual evaluators' conclusions that he has high potential for rehabilitation and low risk of reoffending as strong indications that a sentence much nearer the mandatory minimum than the guideline range or the statutory maximum is adequate to protect the public. In this case, I am aided by a highly regarded and experienced expert, Dr. Rypma, in my determination that defendant Beiermann has a low risk of reoffending.

Similarly, a sentence much nearer the mandatory minimum than the guideline range or the statutory maximum is likely to afford Beiermann the necessary treatment, including sex offender treatment, that he requires and may afford him educational opportunities to

improve his employability. *See* U.S.S.G. § 3553(a)(2)(D) (the court should consider the sentence necessary "to provide the defendant with needed educational or vocational training" or other care or treatment); *see also* Dr. Rypma's Risk Evaluation at 9 ("[Beiermann] does however need to complete a formal [Sex Offender Treatment] Program; his understanding of his offense is limited and his social skills are such that he is likely to benefit from referral to such a program.").

Therefore, I conclude that a sentence near the mandatory minimum is likely to be sufficient.

### 4. *The kinds of sentences available and the sentencing ranges for similar offenses*

The third § 3553(a) factor is "the kinds of sentences available," *see* 18 U.S.C. § 3553(a)(3), and the fourth is "the kinds of sentence and the sentencing range established" for similar offenses. 18 U.S.C. § 3553(a)(4). The applicable statutes provide for imprisonment from 5 to 20 years for the offenses in **Counts 1** and **2** and up to 10 years for the offense in **Count 3**. According to the PSIR, defendant Beiermann is not eligible for probation pursuant to 18 U.S.C. § 3561(a)(1) and U.S.S.G. § 5B1.1(b)(1). He is, however, subject to supervised release for 5 years to life on the charges in **Counts 1, 2, and 3**, pursuant to 18 U.S.C. § 3583(k), and 3 years to life pursuant to U.S.S.G. §§ 5D1.2(a)(1) and (b)(2). As noted above, in child pornography cases, at least one court has recognized that an extended period of supervision after release from imprisonment may mitigate the need for extended imprisonment. *See, e.g., Shipley*, 560 F. Supp. 2d at 745; *but see Stern*, ___ F. Supp. 2d ___, 2008 WL 5273714 at *12 (although the court believed that future supervision would reduce the need for a prison sentence, the court still believed that publication that those who possess child pornography will be imprisoned would help reduce the demand for such material in a way that a less extreme sentence could not). I

find that some substantial period of imprisonment followed by an equally substantial or longer period of supervised release is appropriate in this case, in light of the kinds of sentences available under the applicable statutory and guidelines provisions.

### 5. *Any pertinent policy statement*

The fifth § 3553(a) factor is "any pertinent policy statement." 18 U.S.C. § 3553(a)(5). There do not appear to be any pertinent policy statements. *See Stern*, ___ F. Supp. 2d at ___, 2008 WL 5273714 at *13 (finding no pertinent policy statement). I decline to read congressional mandates for certain provisions of the child pornography guidelines to be any pertinent policy statements. Rather, I believe that the pertinent policy statement is that embodied in the "parsimony provision" of the federal sentencing statute, 18 U.S.C. § 3553(a), which directs me to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. Adhering to this policy, I find that a sentence much nearer the statutory mandatory minimum than the advisory guideline range is likely to be sufficient, but not greater than necessary, to achieve the goals of sentencing.

### 6. *The need to avoid unwarranted disparities*

The sixth § 3553(a) factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A concomitant of this principle is the need to avoid *unwarranted similarities* among defendants who are *not* similarly situated. *See, e.g., Gall*, 128 S. Ct. at 600 ("[I]t is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted similarities among other co-conspirators who were not similarly situated," and there was no procedural error in doing so). This concomitant principle warrants rejection of the advisory guideline range in this case, for all of the reasons stated above. A colleague from the Northern

District of Ohio, Judge Kathleen McDonald O'Malley, has noted the troubling inconsistencies in the way apparently similar child pornography cases are charged and sentenced, and found that such inconsistencies were fueled, in part, by the "absence of coherent and defensible Guidelines" leaving district courts "without a meaningful baseline from which they can apply sentencing principles." *See Stern*, ___ F. Supp. 2d at ___, 2008 WL 5273714 at *13. That court, therefore, considered the cases that it found to present the closest factual analogues to the case before it, but also independently considered the § 3553(a) factors to determine how closely to follow the results in those analogous cases. *Id*. at *13-*14. I find such a procedure appropriate under this sentencing factor.

The parties have not identified any comparable cases within this district.[10] Thus, I begin with a recent case from our sister district, the Southern District of Iowa, before Chief Judge Pratt, *United States v. Shipley*, 560 F. Supp. 2d 739 (S.D. Iowa 2008). Not only should there be some parity from district to district in the same state, but that case involved strikingly similar criminal conduct and other analogies, even though the defendant was convicted of receiving visual depictions of minors engaging in sexually explicit conduct under a different statute, 18 U.S.C. § 2252(a)(2). Like Beiermann, the defendant in *Shipley* was also using the "Hello" file sharing program to chat about and trade images of child pornography almost daily for a period of four months; like Beiermann he had amassed a substantial collection of images, six compact discs of images in that defendant's

---

[10]For the reasons stated above, beginning on page 23, the Northern District of Iowa case of *United States v. Fiorella*, No. CR 07-60-LRR (N.D. Iowa 19) (docket no. 148), before Chief Judge Linda Reade, cited by the prosecution, is distinguishable on numerous grounds, so that it provides no insight on what sentence in this case would avoid unwarranted disparities.

case, some of which portrayed sadistic, masochistic, or violent conduct, as was also true of Beiermann's collection; like Beiermann, he had several screen names that he used to trade child pornography, albeit because he would try to stop trading, then restart, not because he found, as Beiermann had, that different screen names or internet profiles enhanced his ability to trade child pornography; and he readily admitted his involvement when confronted by law enforcement officers, as did Beiermann. *Id.* at 741. Like Beiermann, the defendant in *Shipley* had no prior criminal history of any sort, resulting in a criminal history category of I, and his resulting advisory guideline sentencing range of imprisonment was 210 to 240 months, although the top of the range would be higher but for the statutory maximum sentence of 20 years, the same as Beiermann's advisory guideline sentencing range. *Id.* at 743 (citing 18 U.S.C. § 2252(b)(1)). After rejecting the advisory guideline range on many of the same grounds on which I have rejected that range in this case, finding no likelihood of recidivism, and considering the pertinent § 3553(a) factors, Chief Judge Pratt imposed a sentence of 90 months imprisonment followed by 5 years of supervised release. *Id.* at 746.

Subsequently, Chief Judge Pratt imposed an 84-month sentence, followed by 10 years of supervised release, on a defendant convicted of one count of receiving visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. §§ 2252(a)(2), after rejecting an advisory guideline range of 121 to 151 months, in *United States v. Johnson*, 2008 WL 5115047 (S.D. Iowa Dec. 4, 2008). In *Johnson*, the defendant also received visual depictions of minors engaged in sexually explicit conduct using his internet connection and personal computer and another peer-to-peer file-sharing program, called Limewire, on approximately 300 occasions and had amassed a collection of some 600 images, *id.* at *1, including some that portrayed sadistic, masochistic, or violent images. *Id.* at *4. Although the defendant did not meet the diagnostic criteria for

pedophilia, he was found to be afflicted with several other disorders, including mild bipolar affective disorder and depressive personality. *Id.* at *2. He also had a criminal history category of I and a low likelihood of recidivism. *Id.* at *4.

I find Beiermann's culpability and other personal characteristics and the characteristics of his offenses put him more nearly on a par with the defendant in *Shipley* than the defendant in *Johnson*, specifically in that he was engaged in trading child pornography, not merely receiving it, and had amassed a large collection of images, including some depictions of sadistic, masochistic, and violent conduct—and, incidentally, both the defendant in *Shipley* and Beiermann fell into the same advisory guideline range. I also find that the community and family support for these defendants is comparable. *See Shipley*, 560 F. Supp. 2d at 743-44 (noting "an abundance" of letters in support of the defendant, some offering employment or even residence, upon his release from incarceration). In contrast, the defendant in *Johnson* is less on a par with Beiermann, even though he also used a peer-to-peer file-sharing program, to amass his collection of images, because his conduct involved only receiving, not active trading. I also find that Beiermann's circumstances, like those of the defendant in *Shipley*, warrant a substantial period of supervised release. On the other hand, the lack of mental health issues in Beiermann's case might suggest that a shorter period of supervised release is appropriate for Beiermann than Chief Judge Pratt found was appropriate for the defendant in *Johnson*. Nevertheless, I do find that a significant period of supervised release is appropriate for Beiermann as a means of mitigating the need for extended imprisonment while at the same time indicating the seriousness of the offense and mitigating concerns that the defendant might reoffend. *See, e.g., Shipley*, 560 F. Supp. 2d at 745; *Stern*, ___ F. Supp. 2d ___, 2008 WL 5273714 at *12 (although the court believed that future supervision would reduce the need for a prison sentence, the court still believed that publication that those who

possess child pornography will be imprisoned would help reduce the demand for such material in a way that a less extreme sentence could not); Dr. Rypma's Risk Evaluation at 9 (noting that the knowledge that Beiermann will be supervised upon release informed his opinion that Beiermann currently does not pose a serious risk for predatory sexual violence).

Consideration of recent cases from the adjacent District of Nebraska also suggests that a sentence of approximately 90 months imprisonment and some substantial period of supervised release for defendant Beiermann would avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct, *see* 18 U.S.C. § 3553(a)(6), and avoid *unwarranted similarities* among defendants who are *not* similarly situated. *See, e.g., Gall*, 128 S. Ct. at 600. Less culpable and dissimilar defendants, such as defendants not subject to the same mandatory minimum as Beiermann or who did not engage in distribution of child pornography, as Beiermann did, have received sentences considerably less than the sentence that I suggest is appropriate in Beiermann's case. *See Baird*, 580 F. Supp. 2d at 889 & 895 (sentence of two years was found appropriate for a defendant convicted of one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4), found to be subject to a guideline enhancement for distributing images); *Grinbergs*, 2008 WL 4191145 at *11 (sentence of 12 months and one day found appropriate for a defendant convicted of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), with no finding of distribution); *Gellatly*, 2009 WL 35166 at *11 (a sentence of 60 months was imposed on a defendant convicted of receipt or distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2), but who was found not to have distributed or to have intended to distribute any images). On the other hand, a more culpable defendant, who had a prior conviction for attempted assault on a child, has received a sentence considerably longer than the

sentence that I suggest is appropriate in Beiermann's case. *See Stults*, 2008 WL 4277676 at *11 (a sentence of 144 months with supervised release for life was imposed on a defendant who was convicted of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), but who engaged in trading of child pornography using a peer-to-peer file-sharing network and who had a prior conviction for attempted sexual assault on a child, subjecting him to a 10-year mandatory minimum, even though he was still found to have a criminal history category of I).

Thus, based on this small but instructive group of cases in the same geographical area, avoidance of unwarranted sentencing disparities among similarly situated defendants pursuant to 18 U.S.C. § 3553(a)(6), and avoidance of *unwarranted similarities* among defendants who are *not* similarly situated, *see Gall*, 128 S. Ct. at 600, suggests a sentence for Beiermann of 90 months imprisonment and 10 years of supervised release.

### 7.    *The need to provide restitution*

The final § 3553(a) factor is "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). In *Stern*, the court noted that "restitution" to particular victims was not possible in a child pornography case, but that the "concept of restitution" was still a factor to consider in such a case. *See Stern*, ___ F. Supp. 2d at ___, 2008 WL 5273714 at *15. Therefore, the court ordered "restitution" in the form of community service to those who had suffered similar crimes, which the court suggested could involve assisting battered adult women in a program approved and supervised by the probation office overseeing the defendant's supervised release. *Id*. Although I agree that such recognition of the "concept of restitution" might be appropriate in a child pornography case in which it is otherwise appropriate to sentence the defendant to the relatively short period of imprisonment at issue in *Stern*, 12 months and a day, *id.*, it is far less practicable in a case in which any such "restitution by community service" could not commence until

after the conclusion of a lengthier period of incarceration. Therefore, I find that this factor does not offer insight in this case as to the appropriate sentence.

### III. CONCLUSION

Recognizing that Beiermann has committed serious crimes, but that, for all of the reasons discussed in detail above, the applicable advisory sentencing guideline is not a reliable indicator of the Sentencing Commission's perspective on a fair sentence—and, indeed, the advisory guideline sentence must be rejected both on categorical, policy grounds, even in a "mine-run" case, and certainly must be rejected on the basis of an individualized determination in this case—I find that a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing, *see* 18 U.S.C. § 3553(a), is 90 months of incarceration followed by 10 years of supervised release. Such a sentence is appropriate in light of all of the § 3553(a) factors and, therefore, is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

THEREFORE,

1.     Defendant Beiermann's February 15, 2008, motion for downward variance (docket no. 37) was **granted**; and

2.     Defendant Beiermann was sentenced to concurrent sentences of 90 months of incarceration followed by 10 years of supervised release on **Counts 1 and 2** of the Indictment and a concurrent sentence of 45 months of incarceration followed by 10 years of supervised release on **Count 3**, with such other terms and conditions as were be stated at the sentencing hearing on February 23, 2009. This Memorandum Opinion And Order

51

Regarding Sentencing shall be attached to and incorporated by reference, in its entirety, into the Statement of Reasons and Judgment in this case.

**IT IS SO ORDERED.**

**DATED** this 24th day of February, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA